## Shoenberger's Estate.

*Attorney at law—Contingent fee—Findings of fact.*

The Supreme Court will not reverse a decree of the orphans' court awarding half of the fund raised by the sale of real estate to an attorney at law, where it appears from competent and sufficient evidence that the real estate was recovered for the decedent's estate by the efforts of the attorney under a contract with the administrator by which he was to receive half of the proceeds as a contingent fee.

Argued Jan. 19, 1905. Appeal, No. 339, Jan. T., 1904, by Thomas A. Gummey, Administrator, d. b. n. c. t. a., from decree of O. C. Phila. Co., April T., 1879, No. 148, distributing fund raised from sale of land in estate of Peter Shoenberger, deceased. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Exceptions to adjudication.

PENROSE, J., filed an adjudication which was in part as follows:

The account is of proceeds of sale of real estate in Cambria county, and the only questions presented for consideration are with reference to claims by William R. Blair, Esq., for $2,903.45.

Dr. Peter Shoenberger died in June, 1854, leaving an estate, which in those days was considered a very large one. His will, with codicils, covering fifty closely printed pages, was admitted to probate June 29, 1854, and letters testamentary then issued to John G. Miles, Esq., an eminent lawyer of Huntingdon county, and Michael Berry. He owned real estate in many of the counties of the state, iron works, etc., and after providing in the will and codicils, specifically, for his children, grandchildren and widow, gave the residue of his real estate to his executors, "to be sold either at public or private sale, whenever they shall consider it most to the interest of my estate to sell the same; and my wish is, that such of my real estate as is likely to increase in value by holding the same for awhile, may not be too hastily sold, but that the same may be rendered as productive as possible," etc.; the proceeds of sale,

and in the meantime the income of the lands being given to, or in trust for, his children and grandchildren, as there set forth.

Numerous accounts were filed by the executors, which were referred to Joseph A. Clay, Esq., as auditor, before whom questions of difficulty and involving large amounts were raised, and his reports were duly confirmed; so that, practically, the estate was supposed to have been settled and closed many years ago, and the executors and most of the original parties in interest have long since been dead.

It appears, however, that in 1853 Dr. Shoenberger obtained from the commonwealth patents for two tracts of land in Cambria county, containing, each, from 300 to 400 acres of mountain land, at that time of little value. These tracts, it would seem, were lost sight of by the executors and parties interested in the residuary estate, and in, and prior to 1885, were occupied by two men named McGough and a man named McConnell, who had been in possession for a long time.

In 1885 the fact of Dr. Shoenberger's ownership and of the adverse holding by persons unknown came to the knowledge of William R. Blair, Esq., a member of the bar of Allegheny county. Both of the executors were then dead, but letters of administration d. b. n. c. t. a. had been taken out by John S. Watts, Esq., of Philadelphia, a grandson of the testator; and Mr. Blair, after communicating with Mr. Watts, verbally, and offering to take steps for the recovery of these lands upon the terms suggested by him (Mr. Blair), repeated his proposition in a letter of September 30, 1885, addressed to John S. Watts, administrator, etc., Philadelphia, Penna., as follows:

" My Dear Sir: Your favor of September 29 duly received and contents noted. I am equally anxious with yourself that the property should not be lost, but I think it much better for all concerned that we have a definite understanding as to our positions before going ahead. I beg again to call your attention to the proposition I have already made to you and to urge your acceptance thereof. It is as follows, to wit: first, you to give me in return for my services fifty per cent. of the property recovered, provided said fifty per cent. shall not exceed $6,000. Second, you are to advance the necessary funds for costs and expenses, and in the event of loss of suit, to pay the same, but

in the event of our recovery and inability of the other side to pay them, then I to reimburse you to the extent of one-half of same. Third, you are to have the right to discontinue at any time, but in case you exercise that right, then you are to pay all costs and expenses including a reasonable attorney's fee for services up to the time of discontinuance. These terms are, as I have said, entirely reasonable and proper for you to accept, and it is only just that I should understand distinctly how I stand when acting for the estate. I cannot assume any personal liability for the costs and expenses other than as above. I shall, of course, be responsible for the faithful application of any money you may place in my hands for the purposes of the case, but the case is yours ; you are to share the probable benefits equally with me, viz, I risk my time and labor; you ought certainly to be willing to put up a much smaller stake, viz, the expenses necessary to realize. By suggestion which you mention, as to the probable action of the defendants, is of course merely conjectural. If I should turn out to be correct, so much the better for both of us.

Hoping soon to hear from you, I am very truly yours,

WILLIAM R. BLAIR."

To this letter Mr. Watts answered as follows :

"737 Walnut Street, Philadelphia, October 2nd, 1885. Estate of Peter Shoenberger, deceased. William R. Blair, Esq., Dear Sir : I agree to the terms contained in your letter of September 30th, 1885, in the matter of a claim to certain lands in Cambria County, provided that you shall not in any manner involve me in any personal liability nor charge the estate with costs and expenses beyond the sum of $500.

"Yours very truly,

"JOHN S. WATTS, Admr."

In reply to this, Mr. Blair wrote, October, 7, 1885.

". . . . I do not see how the costs can amount to $500, but if they should, I wish it understood that I do not agree to furnish whatever may be necessary over that amount. You may be sure of one thing, to wit : that I shall put you to no more expense than is necessary. The first thing to be done is to have a survey of the property made so as to identify accurately the amount of our claim. I think my engagements will permit me next week, or if not then, the following week, to go to Cambria

County and have the work begun. I do not know what the survey will cost, but I suggest that you send me $100 for the purpose. As I said in my last, I shall account to you faithfully for every dollar you send me.

"Confidently hoping that our efforts may turn out profitably, I am, very truly yours,

"WILLIAM R. BLAIR."

The answer to this October 8, 1885, was as follows:

"William R. Blair, Esq., Dear Sir: Enclosed you will find check for $100 on account of costs and expense in matter of claim to survey lands in Cambria County.

Yours very truly,

"JOHN S. WATTS, Administrator."

After this, Mr. Blair made various visits to Cambria county, finally meeting the McGoughs and McConnell, and the result was that they agreed to give, and did give a quitclaim deed, and the title of Dr. Shoenberger's estate was thus made complete.

The details of what was done by Mr. Blair are set forth in his testimony, and need not be repeated. In a letter dated November 5, 1885, he made report to Mr. Watts, as follows:

"John S. Watts, Esq., Administrator, etc., Dear Sir: I am happy to be able to report that our matter in Cambria County has progressed favorably even beyond my expectation. I have already made three trips up there; on the first I spent two days and a half obtaining witnesses. A week later I had an interview, and rather a lively one it was, with the parties in possession of two of the tracts named McGough, two of them, and one named McConnell, and on the third trip last week I brought down the game by obtaining from them a release and surrender of possession of the two tracts then in their possession. As to the remaining tract, I have not yet got the evidence down fine enough to interview the parties in possession. I am very busy here just now and will not be able for some time to do anything further for two or three weeks, but so soon as I can I will go ahead and advise you of the result. I have instructed a man named Nepper, who I am informed is a reliable man, to take and hold possession in your name as soon as the McGoughs get their trifling effects off the ground, which they promise this week. I therefore presume you are now in actual possession

of the tract. I agreed to let McGough have some shingles, three thousand in number, worth probably eighteen or twenty dollars, which they had made, they to give me their survey which would have cost us fifteen or twenty dollars at least. I wish you would send me a copy of Dr. S's will for a little while if you cannot give me one. The two tracts recovered contain about six hundred acres, I believe."

To this Mr. Watts answered, November 10, 1885:

". . . . I am glad to hear you are progressing favorably with the matter you have in charge. The will of Peter Shoenberger, deceased, is recorded at Pittsburg. I have only one copy and that is in constant use. I regret I cannot spare it for you.

"Yours very truly,

"JOHN S. WATTS."

A short time afterwards, Mr. Blair received notice that there were unpaid taxes for 1883 and 1884, amounting to $134.80, and having informed Mr. Watts of this, received his check for that sum with which he paid the taxes and obtained the necessary receipt.

Having thus performed his part of the contract, Mr. Blair was anxious that the property should be sold, and the amount to which he was entitled ascertained. Offers, at various times, were received by him, which he always reported to Mr. Watts, so long as he continued to act as administrator, and afterwards to Mr. Gummey, who succeeded him, the last offer being from Fishel Gross, who, as the auditing judge understands, was in some way connected with the final purchase.

Mr. Watts's health compelled him to give up the position of administrator and go abroad. He is now living in Rome.

The arrangement thus made by Mr. Watts with Mr. Blair appears to have been well known to the beneficial owners of the residuary estate; and it would seem that the reason for Mr. Gummey's becoming administrator d. b. n. c. t. a. was that these lands might be disposed of.

Probably because they were not thought to have much value, or for some unexplained reason, the taxes, after possession had thus been obtained, were not paid by the estate, and they were sold at treasurer's sale and bought by the county. In 1892 they came in some way into the possession

of a man named Fulton, and at a later date, in order to effect the sale, an ejectment had to be brought.

For reasons which are stated by Mr. Blair in his testimony, it was not deemed expedient to place the release which he obtained from the McGoughs and McConnell on record; but in November, 1897, he sent it to Mr. Gummey, who had then become the administrator d. b. n. c. t. a., and received the following reply, dated November 6, 1897:

" Dear Sir: Yours of the 4th instant inclosing release of the McGoughs to the David Evans and Charles Evans tracts, received, also copies of original patents. We are pushing the Fultons to a settlement as fast as circumstances will admit, so as to settle with Mr. Gross for the David Evans tract. As soon as this is done, I will file the account, of which you shall have due notice. I thank you for these papers. I think they will greatly facilitate a settlement with the Fultons.

" Yours truly,

" THOMAS A. GUMMEY."

It should be stated that the third tract, referred to in Mr. Blair's letter to Mr. Watts, of November 5, 1888, appears never to have belonged to Dr. Shoenberger—at least the evidence of his ownership could not be obtained.

Under the law of Pennsylvania, which permits an agreement by counsel for contingent compensation (Perry v. Dicken, 105 Pa. 83; Mumma's Appeal, 127 Pa. 474; Sloan's Estate, 161 Pa. 237), it cannot be doubted that Mr. Blair, having fully performed all that he was employed to do, may recover, from the estate of the decedent, which has reaped the benefit, the stipulated amount. The facts with regard to the lands in question were fully understood by the administrator d. b. n. c. t. a., who was himself a man of great intelligence and an accomplished lawyer, and by the persons beneficially interested, with whom it is fair to suppose, he consulted—some of whom, at least, as the testimony shows, had full knowledge and acquiesced in the arrangement. The lands would inevitably have been lost if it had not been made; the will gave to the executors, and consequently to the administrator with the will annexed, the fullest power with regard to the residuary real estate; and the gain has been very considerable. There was, and could have been, no doubt or misunderstand-

ing as to the terms offered by Mr. Blair, and they were accepted, deliberately and after the fullest opportunity for consideration. The contract was in writing, and bound the lands in the hands of the promisee and of those availing themselves of the benefit of what he did, and taking as volunteers.

The amount received from the sale of the two tracts was $7,747.50, of which one half is $3,873.75. From this will be deducted, according to a statement presented by counsel for Mr. Blair, one half of the amount of taxes paid and expenses necessary in completing the title papers on the sale of the property, as shown by the account, viz.: $697 ; balance of cash received for expenses (making survey), $48.30 ; and amount of expenses agreed by claimant that he should be liable for, $250 ; making in all, $995.30, and leaving a balance due of $2,878.25, which, with interest at two and one half per cent (rate of interest on deposits) during the time the purchase money has been held, will be awarded to the claimant.

On a petition to open adjudication, PENROSE, J., filed the following opinion :

A petition having been presented to the auditing judge, asking that the adjudication filed March 21, 1904, be opened on the ground that it appeared on the face of the deed from Patrick McGough et al. to John S. Watts, administrator d. b. n. c. t. a. of Peter Shoenberger, that it was executed before the agreement between William R. Blair, Esq., and John S. Watts, administrator, etc., and, as a necessary consequence, that the agreement was, therefore, without consideration on the part of Mr. Watts, inasmuch as the estate was then the owner of lands to which the agreement related.

An answer having been filed on the part of Mr. Blair, the auditing judge sat for the purpose of hearing testimony May 7, 1904, George W. Reed, Esq., and Thomas A. Gummey, Esq., attending on behalf of the estate of Dr. Shoenberger, and Walter George Smith, Esq., and William R. Smith, Esq., on behalf of William R. Blair, Esq., who also attended in person and was examined as a witness.

It is unquestionably true that the deed referred to bears date October 23, 1884, which was nearly a year before the agreement between Mr. Watts and Mr. Blair referred to in the

adjudication upon which the claim presented by the latter was allowed; but it is equally clear that the date was not 1884, but 1885, and that the figure 4 was simply the result of a clerical error. Apart from the fact that an inspection of the acknowledgment of the deed by Thomas A. McConnell, one of the grantors, shows, to the eye of the auditing judge, at least, that the date was October 30, 1885, though the figure 5 has been blotted and the figure 4 written over it, the evidence as to the actual date of its execution was clear and convincing, based as it was not only on the oral testimony but upon very many letters which were produced in evidence, which could not by any possibility have been fabricated. The deed was drawn by the claimant on October 23, 1885, at Wilmore, Pennsylvania, in the store in which W. H. Robinson, the justice of the peace, before whom it was acknowledged, was employed as manager, and was then signed and acknowledged by Patrick and Daniel McGough, two of the grantors. Mr. Blair stated that he had drawn it hastily, and that he could not explain how he happened to make a mistake in the insertion of its date. Under any circumstances, a deed speaks from the date of its delivery and a mistaken date is not material.

The auditing judge does not feel called upon to refer in detail to the testimony, it is enough to say, what in effect has already been said, that the case, so far as the question of the actual date of the deed is concerned, is absolutely free from doubt. The evidence has all the strength of mathematical demonstration.

It having been thus shown that the agreement preceded the deed, the question as to the right of the claimant to recover the stipulated compensation has already been decided by the auditing judge; and whether he has decided correctly or incorrectly is to be determined by the court in banc upon exceptions to the adjudication.

The court in banc in a brief opinion dismissed the exceptions.

*Errors assigned* were in making the award to William R. Blair, Esq.

*Dallas Sanders*, with him *Thomas A. Gummey*, for appellant.

*Walter George Smith*, with him *William Rudolph Smith*, for appellee.

PER CURIAM, March 6, 1905:

This case presents nothing but questions of fact which have been convincingly stated by the auditing judge and the decree is affirmed on his opinion.

---

## Quigley, Appellant, *v.* Thompson.

*Evidence—Cross-examination—Scope of cross-examination.*

Cross-examination must be confined to matters stated in the examination in chief and independent matters of defense must not be introduced by it. Where matters of defense have been brought out by an improper cross-examination they should be considered as having been introduced by the defendant, and they cannot be considered by the court as ground for a compulsory nonsuit; but an incident of a transaction proved and circumstances connected with it, which qualify or destroy the effect of the testimony in chief may be brought out in cross-examination.

A party is entitled to bring out any circumstances relating to a fact which an adverse witness is called to prove.

*Negligence—Master and servant—Automobiles—Evidence—Cross-examination.*

In an action against the owner of an automobile to recover damages for personal injuries, where the chauffeur of the defendant is called by the plaintiff to show that he was in the employ of the defendant, and to identify the car, it is competent for the defendant on cross-examination to develop by the witness the fact that at the time of the accident he was using the machine in the prosecution of his own business and not in the business of his employer, and that in so doing he was acting contrary to the orders of his employer.

Argued Jan. 19, 1905. Appeal, No. 344, Jan. T., 1904, by plaintiff, from order of C. P. No. 1, Phila. Co., Sept. T., 1903, No. 3762, refusing to take off nonsuit in case of Daniel Quigley v. John W. Thompson. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before BEITLER, J.