## APPEAL OF DAVID MUMMA ET AL.

[ESTATE OF PATRICK EVERS, DECEASED.]

FROM THE DECREE OF THE ORPHANS' COURT OF JUNIATA COUNTY.

Argued May 29, 1889—Decided June 28, 1889.
[To be reported.]

1. The administrator of an insolvent decedent has the right to collect and administer the assets of the estate, and neither creditors nor heirs can be heard to object to credits taken in an account for incident and necessary expenses, except on the ground that the credits are excessive.

2. An agreement in good faith by an administrator of an insolvent decedent to allow to an attorney a contingent collection fee of 50 per cent, is not necessarily invalid as against decedent's creditors; they can object to it only if unreasonable and in fraud of their rights.

3. Whether, under § 33, act of June 13, 1836, P. L. 548, a poor district which has supported a poor person, can maintain a claim in the Orphans' Court for reimbursement out of choses in action falling due after his death and collected by his administrator, not decided.

Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS and MITCHELL, JJ.

No. 58 July Term 1889, Sup. Ct.; court below, number and term not given.

On May 10, 1888, John C. Nissley, administrator of Patrick Evers, deceased, presented an account of his administration. To this account certain exceptions were filed, whereupon *Mr. F. M. M. Pennell* was appointed auditor to hear and determine said exceptions and to report distribution.

At the hearing before the auditor the following facts were made to appear:

Patrick Evers died in 1882. From 1870 until his death he was a pauper and a charge upon the borough of Mifflintown. During this period he was induced by certain persons to take out several policies of insurance upon his life, some of which were made payable to " Patrick Evers, his heirs or assigns," and others to " Patrick Evers, his representatives or assigns." These persons, who had no insurable interest in his life, paid all the expenses and premiums, took from Evers assignments of the policies, and after his death collected on them from the insuring companies considerable sums of money.

In 1886 an agreement was entered into between the heirs of Patrick Evers and Mr. David Mumma, to the effect that the firm of Mumma & Shopp, attorneys at law, of which he was the senior member, should raise an administration in the estate of Evers, collect the insurance moneys from the persons who had received them from the insurance companies, pay all the costs of collection, and receive as a compensation one half of whatever they might collect; if nothing should be recovered, the heirs to be under no liability for fees or expenses. In pursuance of this agreement, on September 9, 1886, John C. Nissley, at the suggestion of Mr. Mumma, took out letters of administration upon the estate of Patrick Evers. Mr. Nissley, as administrator, ratified the contract previously made by the heirs with Mr. Mumma, who, acting under this contract, succeeded in collecting from different persons sums aggregating $1,031.88. Of this amount Mr. Mumma paid over to the administrator the sum of $516, retaining, as the compensation provided for in his contract with the heirs and administrator, the remaining

$515.88, out of which were paid the costs and expenses of the collections, amounting to $76.32.

At December Term 1886 of the Court of Common Pleas of Juniata county, the overseers of the poor of Mifflintown brought an action against the administrator under § 33, act of June 13, 1836, P. L. 548, to recover from him the fund arising from these insurance claims, to the end that it might be applied by them to reimbursing the district for the maintenance of the decedent.    In this action, which was defeated, the administrator was represented by counsel, who charged and were paid $150 for their services.

On May 10, 1888, the account of the administrator was filed. In it he charged himself with the $516 received from Mr. Mumma, as constituting the whole estate in his hands, and took credit, inter alia, for the above mentioned $150 paid as counsel fees, and for $100 claimed by himself as commissions.    The account as stated showed a balance for distribution of $236.06.

To this account the overseers of Mifflintown filed exceptions, objecting, inter alia, to the allowance by the accountant to Mr. Mumma of $515.88, the one half of the insurance moneys collected; to the accountant's failure to charge himself therewith, and to the credits claimed for said counsel fees and commissions.

Upon the foregoing facts found by him, the auditor, on December 18, 1888, filed his report, wherein he held, citing Kennedy's App., 4 Pa. 149, that under the circumstances, the nature of the estate and the time and trouble incident to its collection, the accountant should not be surcharged with the $515.88, the sum paid to Mr. Mumma; that the credit of $150 claimed by the accountant for attorneys' fees paid in resisting the action of the overseers of Mifflintown was not excessive and was allowable; that the allowance of $100 to the accountant as commissions, however, was excessive, and should be reduced to $75.    The balance for distribution was thus increased to $258.06.

The overseers of the poor of Mifflintown presented before the auditor a claim against the estate for $2,027.70, on account of the maintenance of the decedent while he was a charge upon said borough.    The auditor reported that over $500 of this

claim was unbarred by limitation, and upon the question of its allowance reported as follows:

It was argued against the allowance of this claim to participation in this distribution, that, in the first place, the overseers of the poor of the borough of Mifflintown had no legal standing before the auditor in the distribution of the fund. In support of this theory, Deer Isle v. Eaton, 12 Mass. 328; Charlestown v. Hubbard, 9 N. H. 196; Stow v. Sawyer, 3 Allen 515; Jester v. Overseers, 11 Pa. 540, were cited. In these cases, the court decided, that by the common law, the overseers of the poor, who had furnished relief and support to one in need of said relief and support, could not, in the absence of fraud, maintain an action against the party relieved and supported, or against his estate after his death. The relief and support thus furnished the pauper being a mere charity, no debt was created and no action could be maintained therefor. In other words, that the right of the overseers of the poor to maintain an action to recover the property of one whom they have relieved and supported, being a right given only by the act of assembly, they were bound to proceed according to that act. The auditor is of the opinion that these claimants have done so. They were not bound necessarily to bring suit in the Court of Common Pleas to recover this claim; by presenting it before your auditor they complied with the act of assembly.

Again; it was argued that this fund, now in the hands of the administrator, was no part of the estate of the decedent, Patrick Evers; that the accountant was a mere trustee for the heirs; that this was not tangible property in existence while Patrick Evers lived, but only became property by his death for his heirs; that these claimants, the overseers of the poor of the borough of Mifflintown, could not seize this property during the lifetime of the decedent, and that therefore the creditors and these claimants had no interest in its distribution, and that this fund belonged only to the heirs of the decedent. In answer to this, the auditor found that money realized on a policy of insurance upon the life of an individual, made payable to him or "his heirs," or payable to him or his "personal representatives," was personal property in the hands of his administrator for all the purposes of distribution: Day v. In-

surance Co., 111 Pa. 507; Deginther's App., 83 Pa. 339. It makes no difference in this respect, that the policies were assigned by the assured to others, who have no insurable interest in the life of the deceased. The assignments were void, and the property in these policies and the money realized thereon belonged to the assured's estate: Gilbert v. Moose, 104 Pa. 74; Grant v. Kline, 115 Pa. 618; Cooper v. Shaeffer, 20 W. N. 123; Corson's App., 113 Pa. 438, 445; Downey v. Hoffer, 110 Pa. 109; Meily v. Hershberger, 16 W. N. 186; Stoner v. Line, Administrator, 16 W. N. 187. Even where the decedent was the beneficiary in the policy on the life of another, in whose life said beneficiary had an insurable interest, if the party insured died some time after the death of the beneficiary, the Supreme Court has held that the money realized on the policy belonged to the estate of the beneficiary, and was property in the hands of that beneficiary's administrators for the purpose of distribution: Deginther's App. 83 Pa. 337.

In the matter before your auditor for consideration, the policies of insurance on the life of the decedent were payable to him or "his heirs and assigns," or to him or "his representatives and assigns." He was the beneficiary, and the money in the hands of this administrator belonged to the estate of Patrick Evers, deceased, for all purposes of distribution. The act of assembly gives the overseers of the poor of any district in which any person shall have become charged, power to sue for and recover any personal property belonging to such person, and to apply the proceeds thereof, or so much as may be necessary, to defray the expenses incurred in the support and funeral of said person. The common law must give way to the statute referred to. The claimants, the overseers of the poor of the borough of Mifflintown, are legally entitled to this fund; their claim or so much thereof as is not barred by the statute of limitations was fully proven, and there being no other legal claims against this estate, the entire fund in the hands of the accountant, less the expenses of the audit, is awarded to said overseers of the poor of the borough of Mifflintown.

To the foregoing report of the auditor both the accountant and the overseers of Mifflintown filed exceptions, which the court, BARNETT, P. J., disposed of in the following opinion:

The accountant's 3d exception is, that: "The auditor erred in not deciding that the overseers of the poor of the borough of Mifflintown had no legal standing before the auditor in the matter of exceptions and distribution." And his 4th exception is, that: "The auditor erred in not deciding that the relief and support furnished the pauper, Patrick Evers, was a mere charity; and that no debt was created; and that no action could be maintained therefor."

These exceptions are radical, and, if well taken, determine the controversy, because the account is then satisfactory to all parties legally interested, and distribution must be made among the heirs of Patrick Evers. They are based upon the proposition that, at common law, supplies furnished to a pauper are a gratuity, for the payment of which no promise was implied. In support of this proposition, Deer Isle v. Eaton, 12 Mass. 338; Kennebuckport v. Smith, 22 Me. 445; and Stow v. Sawyer, 3 Allen 515, are cited as authorities. But probably the relief of the poor is rather to be considered a duty enforced by statute: 1 Bl. Com. 359. The world owes no man a living; he is in this respect his own debtor. If the poor district has been compelled to assume and pay some portion of this debt, there is no good reason why it should be denied the right to be reimbursed from his estate. Whatever may have been the common law rule, it has been superseded by statute both in Maine and Massachusetts, as well as in Pennsylvania. Our act of June 13, 1836, P. L. 548, makes it lawful "to sue for and recover any real or personal estate belonging to such person, and to sell or otherwise dispose of the personal property . . . . . and to apply the proceeds, or so much thereof as may be necessary, to defray the expenses incurred in the support and funeral of such person." And, since said act makes it lawful "for the overseers of any district . . . . . in which any person shall have become chargeable to sue for," etc., it is apparent that the above cited authorities are not applicable; and that said exceptions are not well taken.

The other exceptions are to the effect, that the auditor erred in reducing the accountant's compensation; in giving the fund to the overseers of the poor; and in not distributing it among the heirs of Patrick Evers.

In regard to the compensation we need only say, that the

amount fixed by the auditor is more than five per cent of the whole amount collected, where there were but little time and trouble required in the collection. It is argued that the disposition of the fund was erroneously made, because it was derived from insurance on the life of Patrick Evers, which was only payable after his death, and no title to have it ever existed except in the legal representatives of the deceased; and that, therefore, the overseers are without any rightful claim. But the conclusion is a non sequitur. The same thing might be said with respect to the heirs, and the argument, if sound, would prove that the administrator alone is entitled to the fund. Day v. New England Life Ins. Co., 111 Pa. 507, is cited to support the argument. But that case simply decides that a policy of life insurance is not the subject of an attachment execution during the life of the assured; but it does not decide that the fund is not assets in the administrator's hands for the payment of all his debts, or that it does not "immediately and necessarily enure to the benefit of all who are interested in the decedent's estate, whether as creditors or distributees." No question was raised here, nor can be raised now, as to the original right to sue for and recover the fund from those liable upon the death of the assured; the fund has been recovered, and the question now is one of distribution. But the case of Jester v. Overseers, 11 Pa. 540, is not without importance, because it decides that the overseers, who had fed and clothed the pauper and not his heirs, were next in interest to the pauper.

The said act of June 13, 1836, P. L. 548, makes it lawful for the overseers "to sue for and recover any real or personal estate belonging to such" pauper. The policy of insurance was a chose in action and personal estate belonging to the pauper. The fact that no recovery could be had on it until after his death did not change its character. A promissory note may not mature until after the payee's death; indeed, it may not be payable until a certain time after his death: Colehan v. Cook, Willes 393; s. c. 2 Stra. 1217; De Wald's Estate, 13 Phila. 251; but it is none the less, for that reason, personal estate of the payee. The statute intends that the overseers shall be reimbursed their expenses, in the pauper's behalf, from the pauper's estate, and should receive a construction consistent with that intention. We are of opinion that the accountant's exceptions should be overruled.[2]

Opinion of Court below.

The first exception filed by the overseers to the administrator's account is, that the administrator has not charged himself with all the moneys collected, and that the auditor erred in overruling said exception. The testimony taken before the auditor shows that there was collected the sum of $1,031.88. This was money that belonged to the estate of Patrick Evers, and his administrator should have charged himself with it. This exception is sustained.[10]

The fourth exception to the administration account is, that the administrator could not allow for collection fee, one half of the fund collected; the heirs had no power to bind the estate by such agreement to the detriment of creditors; and the fourth exception to the auditor's report is, that he overruled that exception. We think this exception is well taken.[12] We are of opinion that the heirs are entitled to no part of this estate. The overseers are next in interest to the pauper: Jester v. Overseers, 11 Pa. 540. Their rightful claim exceeds the whole amount of the estate; there is no balance remaining to be paid over; and therefore nothing payable to the heirs. Their agreement should not therefore deprive creditors of their legal claims. The administrator's counsel should receive reasonable compensation for services properly rendered; but nothing more. Kennedy's Appeal, 4 Pa. 149, cited by the auditor, was decided on its own peculiar facts and is not authority where the facts are different; we think they are materially different in the case under consideration. There was but little trouble in collecting the estate; it belonged, when collected at least, if not before, to the overseers of the poor, who were not bound by an agreement to which they were not a party: Chester Co. v. Barber, 97 Pa. 455.

The claim of the overseers does not appear to be included in any of the actions mentioned in the statute of limitations, and it is based upon the said act of 1836; but we think it unnecessary to decide whether the bar of the statute would apply to any part of their claim, because it does not appear that such objection was raised. It was resisted on the ground that they never had any claim on the fund, and not on the ground that the remedy was impaired. We need not further discuss the exceptions.

Arguments.

The court thereupon restated the account in accordance with the principles laid down in the foregoing opinion, charging the accountant with the whole of the $1,031.88 collected; allowing a credit of $100 for the services rendered under the agreement with Mr. Mumma and further credits aggregating $76.32 for the expenses connected therewith; allowing a credit of $75 for commissions of accountant; reducing the credit for fees of administrator's counsel from $150 to $100,[11] letting the other credits taken in the account stand; and adjudged that there was in the hands of the accountant, after deducting costs of audit, a net balance for distribution of $591.28, and decreed that this sum be paid to the overseers of the poor of Mifflintown.[1]

David Mumma and the accountant, John C. Nissley, thereupon appealed to this court, assigning for error, inter alia:

1. The decree directing payment of the balance for distribution to the overseers of the poor.[1]

2. The overruling of accountant's exception to the reduction of his commissions.[2]

10. Sustaining the first exception to the administrator's account.[10]

11. Reducing the credit for counsel fees to $100.[11]

12. Sustaining the fourth exception to the administrator's account.[12]

*Mr. B. F. Junkin* and *Mr. Alfred Patterson* (with them *Mr. J. Howard Neely*), for appellants:

1. At common law the overseers of Mifflintown could not be creditors of decedent for money paid on his account as a pauper: Deer Isle v. Eaton, 12 Mass. 328; Charlestown v. Hubbard, 9 N. H. 196; Stow v. Sawyer, 3 Allen 513. Is there a statute making them creditors? The only statute is § 33, act of June 13, 1836, P. L. 548, the full force of which is that the overseers are simply sequestrators to apply the pauper's personal property and the income of his real estate to his maintenance and burial. They may sue others for its recovery, but not him as for a debt. Not being creditors, they cannot prove a claim in the Orphans' Court against his estate. If they had any right to the insurance money, their remedy would have been against the assignees of the policies; here,

they can claim if at all only as creditors: Overseers of White Deer Tp.'s App., 95 Pa. 191.

2. The court was cruelly severe in cutting down the amount allowed for Mr. Mumma's fee. The fee was contingent; was fixed by agreement with the heirs, ratified by the administrator, and the actual outlay exceeded the $100 allowed. The overseers had slept for nearly five years without taking steps to recover the money, and, had it not been for Mr. Mumma's diligence, not a dollar would have been realized. Both the administrator and counsel in the action labored faithfully to protect this fund, and the cutting down of the former's commissions from $100 to $75, and the allowance of the latter from $150 to $100, were unjust. All authority teaches that you must not muzzle the ox that treads out the corn. Moreover if these overseers have no standing as creditors, all their exceptions to the account and auditor's report fall.

*Mr. Jeremiah Lyons,* for appellee:

1. The fees and commissions, as allowed by the court, amount to 32 per cent of the whole fund. The appellants claim together over 75 per cent. No court of equity can sanction such rapacity. The agreement with Mr. Mumma was champertous and not binding. The heirs could not bind creditors by it, and as to the administrator it was ultra vires: Chester Co. v. Barber, 97 Pa. 455. The amount allowed the administrator was almost 15 per cent of what he charged himself with in his account. The counsel fee allowed by the judge, who was as familiar with the case as the auditor, was liberal.

2. The heirs of Patrick Evers have not appealed, and no question is presented as to the right of the overseers to the fund. But they are entitled to it under § 33, act of June 13, 1836, P. L. 548. Although there may be no implied assumption on the part of the pauper for maintenance at common law, the statute clearly gives the overseers the right to reimburse the district out of his property, including choses in action, though these may not fall due until after his death. The statute is remedial and should be liberally construed.

OPINION, MR. CHIEF JUSTICE PAXSON:

We can only consider in this case the questions affecting the

parties who have entered an appeal. Said parties are David
Mumma, whose claim to retain one half the fund collected from
the different life policies was disallowed by the court below,
and the administrator of Patrick Evers, the deceased pauper,
whose commissions have been reduced, as well as the amount
expended for counsel fees. The heirs of Patrick Evers have
not appealed, hence the relative rights of said heirs and the
overseers of the poor of the borough of Mifflintown are not
before us. We are, therefore, spared the discussion of this
interesting subject.

The main question is whether Mr. Mumma was entitled to
retain one half the sum collected by him. It appears from the
report of the auditor that Patrick Evers, the decedent, was, at
the time of his death, and had been for several years prior
thereto, a pauper and a charge upon the borough of Mifflin-
town. It further appeared that during his life he was induced
by certain parties to take out life policies in certain speculative
insurance companies. These persons paid all expenses, took
assignments of the policies, maintained them, and after his
death drew money thereon, and kept it as their own. After
the decisions of this court in other cases that such insurances
enure to the benefit of the estate of the assured, an agreement
was made between the heirs of said Patrick Evers and David
Mumma, of Harrisburg, that said Mumma was to raise up an
administration upon the estate, ascertain what policies existed
on his life, who held them, to whom money had been paid
thereon; collect by suit or otherwise the money so paid by the
insurance companies to the policy holders; bear all expenses
and pay all charges out of his own pocket, if no money was
obtained; and if any money was recovered the said Mumma
was to receive as his compensation one half of the gross amount
so obtained. In pursuance of this agreement letters of admin-
istration were taken out upon the estate, and the administrator
ratified the agreement before made by the heirs. Mr. Mumma
succeeded in collecting the sum of $1,031, one half of which
he paid to the administrator, and retained the other half under
the agreement as his compensation.

Up to this time no one had knowledge of a claim on the part
of the overseers of the poor for the maintenance of the pauper.
The overseers made no effort to collect this money from the

parties who had received it, and the auditor distinctly finds that had there been no such agreement with Mr. Mumma there would have been no estate to distribute. The auditor further finds, and in this he is sustained by the evidence, that 50 per cent was the usual charge of attorneys for this class of cases. It must not be overlooked that the fee was contingent; no recovery, no compensation, and the expenses to be borne by the attorney. When we look at the character and amount of the claims, we are not prepared to say that the charge was unreasonable or the agreement ultra vires. We are not discussing a question of professional ethics, but an agreement as to professional compensation. The said agreement was not necessarily invalid because made by the heirs. Prima facie they had a right to make it, subject to the rights of creditors. But the latter having made no move toward collecting the money, they cannot wholly repudiate the agreement made by the heirs in good faith by means of which the money was received. They would have a right to object if it was unreasonable and in fraud of their rights. Neither appears to be the fact in this case, and we think it was error to surcharge the accountant with any portion of the money retained by Mr. Mumma.

The auditor reduced the accountant's claim for compensation from $100 to $75. In this he was sustained by the court below, and we think they were both right. This question does not require discussion.

The auditor allowed a fee of $150 to counsel for professional services. This the court reduced to $100. The auditor found as a fact that the charge was not excessive for the services rendered. The learned judge does not give a satisfactory reason for reversing him upon this point. He does not say that the amount was excessive or that it was not fully earned. That the estate when collected belonged to the overseers of the poor, and that they were not bound by an agreement to which they were not a party, is aside from the case. The administrator had a right to collect this money and to administer the estate. Creditors are bound, as well as heirs and distributees, for expenses incident and necessary to the conduct of the business; they can only be heard to object that such charges are excessive, and this has not been shown in this case. We are

of opinion that the fee of $150 to counsel should have been allowed.

> The decree is reversed at the costs of the appellees, and it is ordered that distribution be made in accordance with this opinion.