## Craig Estate (No. 3)

*James R. DiFrancesco,* for Commonwealth.
*James A. Kudaskik* and *Jon A. Barkman,* for accountant.

COFFROTH, *P.J.,* July 27, 1978—This case is here on exceptions to the first and partial account of the administrator c.t.a. of decedent's estate, filed by the register of wills as inheritance tax agent of the Commonwealth, alleging failure to pay the Commonwealth's claim for additional Pennsylvania transfer inheritance tax of $3,098.25. After the exceptions were filed, the accountant filed an appeal from the action of the register in disallowing claimed deductions which resulted in the assessment of the additional tax.

The exceptions and the appeal raise the same issue: deductibility for inheritance tax purposes of costs and expenses of litigation.

## PROCEDURES

The normal procedure to challenge an accountant's failure to pay a claim is for the claimant to file exceptions to the account in accordance with local rules of court as provided in Pa.O.C. Rule 7.1.[1] Ordinarily failure to file such exceptions results in a final decree of confirmation which has the conclusive effect of denying the claim. See R41-211; McGrorey Estate, 474 Pa. 402, 378 A. 2d 855 (1977). Here the register filed exceptions as prescribed by the rule, thus bringing the Commonwealth's claim before the court for timely decision before a final decree of confirmation is made.

The Inheritance and Estate Tax Act of June 15, 1961, P.L. 373, 72 P.S. §2485-1001, establishes a different procedure for objecting to matters relating to inheritance tax in section 1001 thereof, which provides as follows:

"Any party in interest, including the Commonwealth and the personal representative, not satisfied with the appraisement, the allowance or disallowance of deductions, the assessment of tax, or supplements thereto, or any other matter relating to any tax imposed by this act, within sixty (60) days

---

1. Supreme Court Orphans' Court Rule 7.1 provides: "Exceptions shall be filed at such place and time, shall be in such form, copies thereof served and disposition made thereof as local rules shall prescribe." The applicable local rules are R41-211 and 212; although local rules use the older terminology of "objections" instead of "exceptions" both words describe the same creature, but correct usage should follow the Supreme Court Rule.

after receipt of notice of the action complained of may—

"(1) File with the Department of Revenue a written protest thereagainst sending a copy thereof to the Department of Justice; or

"(2) Notify the register in writing that he elects to have the correctness of the action complained of determined at the audit of the account of the personal representative; or

"(3) Appeal to the court to have the correctness of the action complained of determined at the audit of the account of the personal representative, or at such time as the court shall fix.

"The protest, notification or appeal shall specify all the objections to the action complained of. When the protest, notification or appeal is filed by the Commonwealth, a copy thereof shall also be sent to the personal representative and to all other persons who filed a tax return."

It is not entirely clear how the exceptions under the rules and the protest-appeal procedure under section 1001 affect one another. We are satisfied that the Commonwealth followed a correct procedure by filing exceptions, and it is therefore not required to take any of the procedures authorized by section 1001. We do not decide what the Commonwealth's position would be had the register followed section 1001 without filing proper exceptions under local rules. Compare Hofmann Estate, 73 D. & C. 2d 489 (1976).

As to the accountant who has filed an appeal to the court under section 1001, supra, we think that step was unnecessary but permissible as a precautionary measure. Compare Gillespie Estate, 462 Pa. 455, 458, n. 3, 341 A. 2d 471 (1975).

We also note the requirement of section 1001, supra, that the "protest, notification or appeal shall specify all the objections to the action complained of." The accountant's appeal should have been made more specific under the above-quoted clause by stating specifically the item and amount of the deduction disallowed, and the amount thereof if any allowed; but the appeal has not been challenged on that ground, and besides the appeal is unnecessary to the proceeding as above discussed. We also think the exceptions are too general and should likewise have been more specific; but they too have not been challenged on that ground and besides the local rule does not require such specificity. That is a defect of our rule which ought to be remedied by an appropriate amendment. Exceptions to an account and/or statement of proposed distribution are a pleading and should be specific enough to define the issues in advance of hearing and to communicate them clearly to all concerned. Compare Herbert Estate, 65 D. & C. 2d 443 (1974); Com. v. Penner, 34 Somerset 364, 366, 5 D. & C. 3d 499, 501 (1977); Pittsburgh National Bank v. Garrity, 31 Somerset 333, 337 (1976); Pittman v. Trent, 30 Somerset 283, 285 (1975).

Before attempting to determine the propriety of the tax deductions in issue, we should first outline from the record the essential facts.

## FACTS

Decedent, Mrs. Verdie Craig, died on or about June 6 (or 8), 1973, as the result of acts of criminal violence committed by one Harry Bamber with whom she lived and who was named as sole beneficiary and executor in her will. Bamber was arrested

and charged with murder, was tried in this court, found guilty of voluntary manslaughter, sentenced to prison, and appealed his conviction to the Supreme Court of Pennsylvania. Meanwhile a contest developed between Bamber and the relatives of decedent over the right of Bamber as "slayer" to act as executor and to share in the estate which consisted of some bank deposits and unimproved real estate all located in Virginia where decedent and Bamber had both previously resided. The accountant as one of the heirs at law of decedent probated the will both in Virginia and in Pennsylvania (this county) and obtained letters of administration c.t.a. in both states. Bamber challenged the issuance of the letters in Virginia, and he did the same here by filing an application for letters testamentary and a petition to revoke the letters issued to accountant; that controversy was certified by the register to the court for decision under the Decedents, Estates and Fiduciaries Code of June 30, 1972, P.L. 508, 20 Pa.C.S.A. §907. On the same date, accountant filed a declaratory judgment petition in the orphans' court of this county seeking a judgment declaring that: (1) the register of wills properly granted letters to the accountant, (2) decedent was domiciled in Pennsylvania at death, and (3) Bamber (respondent in the petition) was decedent's slayer and as such was barred from taking beneficially in the estate under the will or otherwise.

In the course of the foregoing events, accountant as administrator c.t.a. filed a trespass survival action on the civil side of this court against Bamber to recover for the estate damages on account of decedent's death. In that case, accountant as plaintiff took a default judgment against Bamber whose petition to open the judgment was under advisement

when the declaratory judgment case came before the court for resolution, and at the same time Bamber's appeal of his conviction for voluntary manslaughter was pending in the Supreme Court.

Bamber filed numerous preliminary objections to the declaratory judgment proceedings, seeking its dismissal, all of which were overruled in Craig Estate, 30 Somerset 377 (1975), herein called Craig Estate (No. 1). Shortly thereafter, the Supreme Court affirmed Bamber's criminal conviction: Commonwealth v. Bamber, 463 Pa. 216, 344 A. 2d 799 (1975); following which the declaratory judgment case was tried on its merits resulting in a decision for petitioner (accountant) against Bamber (respondent) on all issues. See Craig Estate, 32 Somerset 255, 1 D. & C. 3d 537, 27 Fiduc. Rep. 102 (1976), herein called Craig Estate (No. 2). Thereafter Bamber's petition to open the civil default judgment in the survival action was denied, whereupon the accountant levied execution on behalf of the estate upon Bamber's Pennsylvania real estate, bought it in at sheriff's sale and listed and accounted for it in kind in the estate. All of the judicial proceedings in the estate were held before and supervised by the undersigned as presiding judge.

## DISCUSSION

All the deductions in issue are for expenditures incurred after death in the administration of the estate for counsel fees, administrator's fees and costs of litigation, which bring into play the provisions of the Inheritance and Estate Tax Act of 1961, 72 P.S. §2485-101 et seq. Two specific provisions of that act governing deductible expenses are applicable, as follows: §611 provides: "All reasonable

expenses of administration of the decedent's estate and of the assets includable in the decedent's taxable estate shall be deductible." §663 provides: "Litigation expenses of beneficiaries shall not be deductible."

## Counsel Fee

Counsel claim a total fee as compensation under their contingent fee agreement of $12,228 (40 percent of gross estate assets). The register has reduced that amount to $1,450 which appears to be calculated at five percent of personalty and three percent of realty.

To put the problem in perspective, we should first state the basic principles which govern the amount and liability for counsel fees in a decedent's estate:

(1) The personal representative has authority to employ legal counsel to advise and assist him in administration of the estate, whose reasonable fees for legal services to the estate are a proper charge against the estate: Faust Estate, 364 Pa. 529, 73 A. 2d 369 (1950); 16 P.L.E. 47, §149. Such fees are administration expenses and as such are deductible for inheritance tax purposes under section 611, supra, of the Inheritance and Estate Tax Act in calculating the taxable clear value of the estate. See Joint State Government Commission Comment to §611; 36 P.L.E. 533, §506; 16 P.L.E. 47, §149.

(2) "What is a fair and reasonable fee is sometimes a delicate, and at times a difficult question." LaRocca Estate, 431 Pa. 542, 546, 246 A. 2d 337 (1968). The prime factors to be taken into consideration are: the amount, character, difficulty and importance of the work done; the professional skill and standing of the attorney, the amount of money

or value of property involved, and the results he was able to obtain; the amount customarily charged for similar services, and whether the fee is fixed or contingent; and the ability of the client to pay: LaRocca Estate, supra; Code of Professional Responsibility, Canon 2, Disciplinary Rule 2-106, 42 Pa.C.S.A. It is recognized that an attorney cannot be fully or reasonably compensated when the amount of money or value of the property involved, or the client's ability to pay, are inadequate for that purpose: LaRocca Estate, supra, 546, n. 2; Geary Estate, 3 D. & C. 3d 537 (1976). But the profession recognizes and is ethically obligated to "find time to participate in serving the disadvantaged . . ." and to render ". . . free legal services to those unable to pay reasonable fees . . ." (Code of Professional Responsibility, supra, Ethical Consideration 2-25). The code specifically prohibits a lawyer from entering "into an agreement for, charge, or collect an illegal or clearly excessive fee." Code, supra, Disciplinary Rule 2-106(A). In general, attorney fees allowed from an estate should be on a moderate scale: Huffman Estate (No. 3), 349 Pa. 59, 36 A. 2d 640 (1944); McRoberts v. Burns, 348 Pa. 166, 173, 34 A. 2d 519 (1943); Crawford's Estate, 307 Pa. 102, 111, 160 Atl. 585 (1931).

(3) Contingent fees, that is, a fee whose payment is contingent upon the outcome of the case, is a valid method of fixing an attorney's compensation. Use of the contingent fee is often the only way that persons of low or moderate means can afford or expect to command extensive legal services from skilled counsel. See Code of Professional Responsibility, Ethical Consideration 2-24. All contingent fee agreements must be in writing, a copy given to the client when it is made, the attorney must retain

a signed copy for at least two years after final judgment in the case, and the agreement is subject to inspection by the court, the bar association and the Supreme Court's Disciplinary Board: Pa.R.C.P. 202. Use of the contingent fee agreement in estate litigation is permissible and often appropriate: Thompson Estate, 426 Pa. 270, 232 A. 2d 625 (1967); Shoenberger's Estate, 211 Pa. 99, 60 Atl. 502 (1905); Mumma Appeal, 127 Pa. 474, 18 Atl. 6 (1889). As previously stated in paragraph (1) above, a factor in determining the reasonableness of a counsel fee is whether the fee is fixed or contingent (payable only if the client and the attorney succeed); as said in Mumma Appeal, supra, 485: "It must not be overlooked that the fee was contingent; no recovery, no compensation . . ." Where the attorney receives nothing for his services if he loses, a much higher award is justified if he wins; in such case he must be compensated not only for his services, but for sharing with the client the risks of losing and getting nothing; otherwise contingent fee agreements would be unobtainable and the client may be unable to afford a fixed fee, leaving him remediless. The higher fee is particularly justified if the attorney's services play a substantial role in creating or putting into the client's hands a fund or property which he otherwise would not have had and from which the fee can be paid. See Grier Estate (No. 2), 31 D. & C. 2d 66, 73 et seq. (1963).

(4) Section 611, supra, of the taxing statute expressly conditions allowance of administration expenses for inheritance tax purposes upon being "reasonable", thus placing the obligation upon the agent for the Commonwealth, and ultimately upon

the court, to determine reasonableness before allowing the deduction. But the court's duty to determine the reasonableness of counsel fees goes far beyond inheritance tax cases. In any and every case involving a fiduciary, who is an accountable officer of the court, his conduct as fiduciary is subject to judicial control which includes the power to determine the allowance or disallowance of his disbursements from the estate according to their reasonableness; such judicial supervision is provided not only for the protection of the Commonwealth's interest in its inheritance tax, but also for creditors and parties beneficially interested in the estate. See LaRocca Estate, supra. In addition, whenever a contingent fee agreement is used for fixing the compensation of counsel by any client, whether or not a fiduciary is involved, the court has supervisory power of control for the client's protection because every attorney at law is an officer of the court and subject to its Code of Professional Responsibility. See Thompson Estate, supra; 3 P.L.E. 556, §77. The law regards such judicial supervision of counsel fees as so important to the administration of justice that the court may, at least when a fiduciary is involved, exercise its jurisdictional control on its own motion or initiative whenever the need for it comes to the court's attention, even though no party has filed a challenge to the fee: Thompson Estate, supra, 276.

(5) Ordinarily, where the fiduciary employs more than one attorney for the estate, the total compensation for all may not exceed reasonable compensation for one in performing the ordinary services necessary and proper in the estate's administration. See Browarsky Estate, 437 Pa. 282,

263 A. 2d 365 (1970); Harris's Appeal, 323 Pa. 124, 186 Atl. 92 (1936); Ogden Estate, 69 D. & C. 2d 627 (1974).

(6) The services performed and their value should be proved as any other claim. See Ayers Estate, 420 Pa. 451, 218 A. 2d 326 (1966); Crawford's Estate, supra, 111; Wood's Estate, 272 Pa. 8, 115 Atl. 865 (1922); Moore's Estate (No. 1), 228 Pa. 516, 77 Atl. 899 (1910); 3 P.L.E. 573, §87. The attorney should log his time as the services are performed and make proof of it, although that may not be absolutely essential in every case; of course, the amount of time spent by an attorney on a case is only one of the factors to be considered in determining the value of legal services. See paragraph (2) supra; Bickel Appeal, 388 Pa. 270, 130 A. 2d 498 (1957).

(7) An attorney is bound to exercise reasonable care and diligence, and the legal skill and knowledge ordinarily possessed by members of the profession, in discharging the duties of his employment: 7 C. J. S. 957, §125; 3 P.L.E. 531, §51. Failure to measure up to that standard may result in liability, including reduction or denial of compensation. See Lohm Estate, 440 Pa. 268, 269 A. 2d 451 (1970).

(8) For ordinary legal services performed in the administration of a decedent's estate, the usual and customary allowable fee is five percent of the fair value of the administered assets, with lower percentages for large estates and for handling unadministered assets; additional reasonable and customary sums are allowable for litigation and other extraordinary services according to the circumstances of the case. See Strand Estate, 3 D. & C. 3d 457 (1976); Serfoss Estate, 2 D. & C. 3d 180 (1976);

Zerbey Estate, 59 D. & C. 2d 133 (1972); Williams Estate, 42 D. & C. 2d 169 (1967).

(9) The attorney for the fiduciary is entitled to compensation from the estate only for legal services rendered to the estate.[2] Therefore, services to the fiduciary as an individual are not compensable from the estate. See Dunn Estate, 72 D. & C. 2d 697 (1975). Ordinarily legal services performed for creditors in establishing and collecting claims from the estate are not payable by the estate; similarly legal services performed for a beneficiary (devisee, legatee or heir) in establishing the right to distribution or making collection from the estate are not ordinarily compensable by the estate. These rules are discussed more fully later in the opinion.

In this case, the reasonableness of the disbursements claimed has not been challenged by anyone; no exceptions have been filed by anyone, creditor, heir or the Commonwealth, to the allowance of these disbursements in the account. The issue is limited to the allowance of the deductions in the inheritance tax calculation. Our own review of the extensive legal services performed in the course of the administration of this estate confirms the propriety of using the contingent fee agreement and of the fee provided for therein. The legal basis for the Commonwealth's exceptions to the item in the account showing payment of inheritance tax is section 663 of the Inheritance and Estate Tax Act, which provides that: "Litigation expenses of beneficiaries shall not be deductible."

---

2. Legal services will be construed broadly as including services by the attorney of a practical or business nature which aid or benefit the estate's administration. See Parry Estate, 188 Pa. 38, 41 Atl. 384 (1898).

We first note the difference between the liability of the estate for an expenditure, and the liability of the Commonwealth to allow an inheritance tax deduction for the same expenditure. Inheritance tax deductions are confined to those allowed by the taxing statute, whereas permissible estate expenditures are governed by the laws pertaining to the administration of decedent's estates. The Commonwealth's liability to allow a deduction or a disbursement does not necessarily follow from estate liability for its payment. Nevertheless, the rule as to estate liability for the expense of litigation of beneficiaries, and the rules as to inheritance tax deductibility of such expense, are essentially the same: as a general rule, with some exceptions, such expenses are neither payable by the estate nor deductible for inheritance tax purposes.

In the present case, a substantial part of the legal services is attributable to the litigation engaged in, in the course of the estate's administration, consisting of the declaratory judgment proceeding, the civil action, and this inheritance tax appeal. We must analyze those proceedings to determine whether they involved litigation expenses "of beneficiaries" within the meaning of section 663. Before doing so, however, we should examine the authorities for the help they can give us on that issue.

## Litigation Expenses of Beneficiaries

The chief source of the intended meaning of section 663 is the comment to the section by the Joint State Government Commission which drafted the Inheritance and Estate Tax Act of 1961. That comment reads as follows: "This is in conformity with existing law: Lines Estate, 155 Pa. 378 [26 Atl.

728 (1893)]; cf. Taber's Estate, 257 Pa. 81 [101 Atl. 311 (1917)]; Burkhart Estate, 25 Pa. Superior 514 [1904]." The cited cases give some help in determining what the statute means.

In Lines's Estate, supra, the main issues of inheritance taxability did not concern litigation expense which was only incidentally involved in the case. The hearing judge disallowed the litigation expenses as an inheritance tax deduction but gave no reasoning, saying merely at 386: "But there is no warrant to make allowance for expenditures in procuring the aid of counsel by parties taking estates. The $12,159.00 cannot be deducted." On appeal, the Supreme Court affirmed in an opinion which discusses the principal issues without mentioning specifically the disallowance of the litigation expense deduction, except in the following generalities at 394: "There appears to be no error in either of the matters referred to in the remaining specifications. In view of what has already been said in the opinion of the court below and here, neither of them requires special consideration."[3]

Since Lines's Estate is the primary authority cited by the Joint State Government Commission as the source of section 663, we must look at the type of litigation there involved, which is found in Lines v. Lines, 142 Pa. 149, 21 Atl. 809 (1891). The report of that case shows that it was an equity action brought by decedent's widow against the trustees and beneficiaries of deeds of trust made by decedent in his lifetime which the widow alleged deprived her of

3. Disallowance of the counsel fees for litigation by the hearing judge was one of the specifications of error on the appeal in Lines's Estate, supra, at 387.

her lawful share in her husband's estate; she requested the court to decree the deeds void as to her and that the trust assets be delivered to the executors for administration as part of the probate estate. The widow's claim was denied and her suit dismissed. The counsel fees which came into question and were later disallowed in Lines's Estate, supra, were the fees paid to counsel by the beneficiaries of the trust deeds who successfully defeated the widow's claim. The executors were not parties to the litigation, and the trust assets never came into their hands for administration; those assets were passed direct by the trustees to the beneficiaries under the provisions of the trust deeds, at the death of the decedent, and the court held that these were taxable transfers (see Helman Estate, 28 Somerset 324 (1973)). The litigation did not involve the estate, did not benefit the estate, and was a contest among beneficiaries over a question of distribution, that is, who should take the estate and in what shares. It is crystal clear that the counsel fees in that case were "litigation expenses of beneficiaries" and therefore would not be deductible for tax purposes under section 663, and would not be payable by the estate under general estate law because the services were not rendered to the estate.

In Taber's Estate, cited above in the comment to section 663, the litigation was a contest over the validity of the will in which the larger part of the estate went to charities, and which was challenged by relatives. The suit was settled by the estate paying substantial sums to the contestants, and the agreement called for payment of $7,500 to attorneys for the estate who worked to sustain the will. The court held that the settlement money was taxable as part of decedent's estate and that the attorney's fee for the litigation must be disallowed as a

tax deduction because the case involved only a contest between contending beneficiaries over distribution, that is, who should take and in what shares. On the latter point the court said 85-86:

"An executor is not bound to defend his testator's will. If he undertakes to do so, it must be as the agent and in the interest of those *benefited* by his action. He must look to them for expenses incurred in the contest over the will, and may not charge the same to the estate *unless it is benefited by the proceeding.* Yerkes's Appeal, 99 Pa. 401. No *benefit* resulted to the estate of the testatrix in the case before us through the proceeding to contest her will; but it did largely *benefit* her next of kin." (Emphasis supplied.)

It is the established rule in Pennsylvania that the expenses of a will contest are not payable by the estate unless the estate, as distinguished merely from the contestants as beneficiaries, benefits from the litigation. See Faust Estate, supra; Yerkes Appeal, cited in the quotation from Taber Estate, supra; Royer's Appeal, 13 Pa. 569 (1850); Geddis's Appeal, 9 Watts 284, 286 (1840); Fetter's Estate, 151 Pa. Superior Ct. 32, 29 A. 2d 361 (1942). The matter is more fully stated in Mumper's Appeal, 3 W. & S. 441, 443-4 (1842).

"Generally, I take it, that the ordinary costs and expenses incurred by him in either prosecuting or defending a suit, as executor, for the benefit of the estate, are to be paid out of it. This would seem to be right upon the general principle that a trust estate must bear the expense of its administration. But suppose, in this case, that the issue joined for the purpose of proving the validity of the will, had been decided against the executor, can it be imagined that he would be entitled to retain out of the estate

which had come into his hands, not only the legal costs of the issue for which judgment had been rendered against him, but likewise the $600.00 paid by him to counsel for their advice and professional services given in order to sustain the will? As regards the quantum of the estate, it is a matter of indifference whether there be a will or not. Will or no will, is a question which cannot affect the estate, in this respect, in the slightest degree: but it may be, and generally is a matter of great interest to those who claim as legatees or devisees under the writing purporting to be a will. They are the only persons interested in establishing it as a will. While on the other hand, the heirs at law, or next of kin to the deceased, who are either excluded by the writing from receiving any portion of the estate, or as much of it as they would be entitled to in case of intestacy, are the persons principally interested in opposing the establishment of the writing as a will. If the person appointed by it as executor, be named also as a legatee or devisee, then as such he may be deeply interested also in establishing it to be the last will of the deceased. But it is clear that creditors and the rest of the world have no interest whatever in the question.

"It would therefore seem to be just, as well as equitable, that those who have an *immediate and direct interest* in the question, should be left to contest and bear all the costs and charges attending it. It ought to be left to them to employ counsel or not, as they please; and consequently to bear the expenses of doing so. If left to those named in the writing as legatees or devisees, to employ counsel, when thought advisable, they can, by agreement among themselves, apportion the expenses of it according to their respective interests, which would

certainly be both equitable and just. . . . (Emphasis supplied.)

"The person named as executor in the writing, when advised that its validity as a will is about to be contested, ought to give notice to those who are named in it as legatees or devisees, so that they may employ counsel, if deemed requisite, or authorize him to do so at their expense. If they, after being so notified, do not choose to employ counsel or authorize any to be employed on their behalf, they must abide the consequences, and will have no reason to complain if the writing be not established as a will, seeing they were not willing to encounter the expense with which the employment of counsel would have been attended." Thus, benefit and equity are the significant factors in determining who shall pay for the expenses of litigation.

The third case cited in the comment to section 663 above is Burkhart's Estate. In that case, the inheritance tax appraisement made by the heirs failed to itemize the taxable assets, resulting in the appointment by the court of an auditor to do so and to apportion the taxes. The court held that the expenses of the audit could not be charged to the Commonwealth for inheritance tax purposes but must be charged to the heirs whose error in making the faulty appraisement caused the expense. As the court said at 516: "There is, however, no ground for charging the commonwealth with the expense of an unnecessary audit undertaken at the instance of others." That decision again illustrates the salient force of principles of fairness and equity in deciding liability for litigation expenses.

No decisions discussing section 663 or dealing with the situation in this case have been presented

to us, and we have found none. Compare Grossman and Smith, Pennsylvania Inheritance and Estate Tax §663 (Bisel 1971). So we must make our own analysis of the phrase "litigation expenses of beneficiaries." From our study of the problem and the decisions in related areas, we reach the following conclusions:

(1) The expense of litigation conducted by the personal representative in the exercise of his legal duty or authority in the administration (inventory and appraisement, collection, liquidation and distribution) of the estate is a liability of the estate. Thus, for example, inheritance and estate tax litigation rests on the personal representative's legal duty to file tax returns and to pay the tax: 72 P.S. §2485-701, Pennsylvania inheritance tax; 72 P.S. §2485-731, Pennsylvania estate tax; 47 C.J.S. 1005, §770, and Sum. Pa. Jur., Administration of Estates §207, Federal estate tax. Probate Code section 3311 expressly provides that the personal representative ". . . during the administration of the estate, shall have the right to maintain any action with respect to it and shall make all reasonable expenditures necessary to preserve it."[4]

(2) The grant of authority in section 3311, supra, to the personal representative to "maintain any action with respect to" the estate must be taken as a broad general principle which is subject to definition as cases arise. In doubtful cases, the test of the

---

4. Only the personal representative stands in the shoes of the decedent and can litigate the decedent's rights, but if the representative declines to act the court may authorize the parties in interest to be benefited by the proposed litigation to sue in the name of the personal representative. See Kilpatrick Estate, 368 Pa. 399, 402, 84 A. 2d 910 (1951); Flick Estate, 66 D. & C. 2d 556 (1974), and 70 D. & C. 2d 303 (1974).

personal representative's authority to litigate at estate expense is whether the estate has such a *direct and immediate beneficial interest* in the issues of the case as to warrant its liability for the expense. See Royer's Appeal, supra, 573, and Mumper's Appeal, quoted supra. Thus, the personal representative is authorized to litigate to collect debts and other moneys due the estate and to pay the expenses thereof. See Schoenberger's Estate, supra; Mumma's Appeal, supra. It is similarly clear that litigation to defend the estate from claims against it and the payment of reasonable expense therefor is authorized. In such cases, immediate and direct benefit to the estate is apparent. In Browarsky Estate, 437 Pa. 282, 263 A. 2d 365 (1970), executors were allowed counsel fees incurred in resisting a surcharge because they "were placed in the position to be sued because of duties they had performed for the estate" (285); otherwise fiduciaries may be chilled into timidity in performing their duties by the prospect of having to defend themselves at their own expense. Thus the expense is for the benefit of the estate. Defense by an executor (or administrator c.t.a.) of the will under which he serves and which he is sworn to execute might by strict construction of language be considered as an "action with respect to" the estate within the terms of section 3311 supra; yet the personal representative cannot claim such authority in the absence of facts showing an immediate and direct benefit accruing to the estate from his participation in the contest (or a direction in the will to defend: Bennett Estate, 366 Pa. 232, 77 A. 2d 607 (1951)).

(3) What constitutes an immediate and direct benefit in this context (which justifies payment of litigation expense by the estate), as distinguished from an incidental benefit (which does not justify

payment of litigation expense by the estate), has not been clearly defined for all cases; but we derive substantial guidance from those cases in which expense was incurred in litigation "with respect to" the estate which was undertaken and conducted, not by the personal representative, but by a creditor or beneficiary of the estate. In such cases, the party hiring the attorney must pay the counsel fee and other litigation expense, unless (a) the litigation augments the estate assets by bringing into the administration (*"creating"*) a fund or property which otherwise would not have been part of the corpus of the estate, and from which the litigation expense can be paid, or (b) the litigation *preserves* estate assets which otherwise would likely have been lost. As stated in Restatement, Restitution, §106: "A person who, incidentally to the performance of his own duty or to the protection or improvement of his own things, has conferred a benefit upon another, is not thereby entitled to contribution."

But, as stated in §105(2) thereof: "A person who through legal proceedings procures or preserves property in which he and another have an interest may be entitled to reasonable compensation for his services and restitution of his expenses in obtaining or preserving the property."

See also comment g applying this principle to decedents' estates "where a creditor or other person interested in the administration of the estate of a deceased person brings proceedings in a probate or equity court, thereby obtaining administration of the estate which inures to the benefit of himself and other creditors or beneficiaries."

The Pennsylvania decisions are generally in accord with the above-stated principles. The most difficult problem is to distinguish litigation which

*preserves* the estate from litigation which is merely incidental to advancing one's own interest. The equity for payment by the estate is clearest and strongest where the litigation augments the assets of the estate by bringing into court and subjecting to administration money or property not otherwise part of the estate corpus.[5]

With the foregoing principles in mind, we examine the litigation involved in this case.

---

5. In the following cases, the estate or fund was held liable for counsel fees for litigation which created the estate or fund: Harris's Appeal, 323 Pa. 124, 186 Atl. 92 (1936); Crawford's Estate, 307 Pa. 102, 160 Atl. 585 (1931); Schoenberger Estate, supra; Mumma's Appeal, supra; Krodel's Assigned Estate (No. 2), 27 Pa. Superior Ct. 421 (1905), successful surcharge proceedings; Binenstock Trust, 38 D. & C. 2d 633 (1966); Kauffman v. Hunt, 65 D. & C. 566 (1948).

In the following cases, the estate or fund was held liable for counsel fees for litigation which preserved it: LaRocca Estate, supra; Vassaluzzo Estate, 56 D. & C. 2d 326 (1971).

In the following cases (in many of which the principles stated in the opinion are articulated or applied), the estate or fund was held not liable for counsel fees for litigation which did not either create or preserve the fund and whose benefit to the estate was therefore only incidental: Sowers Estate, 383 Pa. 566, 119 A.2d 60 (1956); Washington Trust Company Account, 350 Pa. 363, 39 A. 2d 137 (1944); Peoples Pittsburgh Trust v. Pittsburgh United, 334 Pa. 107, 5 A. 2d 890 (1939); Wilbur's Estate, 334 Pa. 45, 5 A. 2d 325 (1939); Harrison's Estate, 221 Pa. 508, 70 Atl. 827 (1908); Com. ex rel Hensel v. Order of Solon, 193 Pa. 240, 44 Atl. 327 (1899); Flood Appeal, 178 Pa. Superior Ct. 75, 113 A. 2d 349 (1955); Smaltz' Estate, 142 Pa. Superior Ct. 463, 17 A. 2d 455 (1940); Metropolitan Life v. Doty, 140 Pa. Superior Ct. 581, 14 A. 2d 878 (1940).

For discussion of the distinction between "creating" and "preserving" an estate or fund, see LaRocca Estate, supra; Smaltz' Estate, supra, 467.

A trustee, as distinguished from an executor or administrator is authorized to defend the will in which the trust is created, at the expense of the trust estate. See Thompson Es-

## Declaratory Judgment Proceeding

In the petition for declaratory judgment filed in June, 1975, the petitioner is Dorman A. Delawder of New Market, Virginia, administrator c.t.a., a brother of decedent. The filing of that petition was preceded by the execution in May, 1975, by certain heirs at law of decedent, of a power of attorney and the contingent fee agreement authorizing Attorneys Barkman and Kudasik to institute and prosecute litigation "for the estate of Verdie Florence Craig."[6] The probated will left the entire estate to Harry Lee Bamber with whom decedent lived at the time of her death, and appointed him sole executor.

The filing of the declaratory judgment petition had also been preceded by petitioner Delawder's appointment in Virginia in 1974 as administrator of the estate, and the same will was probated there.[7]

The declaratory judgment petition sought a determination that decedent was domiciled in Penn-

---

tate, supra; Battles Estate, 379 Pa. 140, 108 A. 2d 688 (1954); Lowe's Estate, 326 Pa. 375, 192 Atl. 405 (1937); Crawford's Estate, supra; Scott's Estate, 9 W. & S. 98 (1845); Smaltz' Estate, supra.

6. According to the application for letters of administration c.t.a., decedent was survived by a brother and three sisters, and three children (nephew and two nieces) of a deceased sister, as her heirs at law. The brother and two sisters reside in Virginia, one sister resides in West Virginia, and no address is given for the nephew and nieces. The power of attorney is signed by the brother and three sisters.

7. It was alleged in the Pennsylvania probate proceedings that decedent was domiciled in Somerset County, Pennsylvania; it was alleged in the Virginia proceedings that decedent was domiciled in Virginia. Domicile was a prime and sorely contested issue in the declaratory judgment case.

sylvania (making Pennsylvania law instead of Virginia law applicable to the administration and distribution of the estate), and that Harry Bamber be disqualified from serving as executor and from taking any share or interest in the estate because under Pennsylvania law his conviction of the voluntary manslaughter of decedent made him a "slayer." Under Virginia law which would have been applicable had decedent been domiciled in Virginia at the time of her death, see Craig Estate (No. 1) supra, 399 note [8], Bamber was not a disqualified "slayer." Thus in order for the heirs at law to nullify Bamber's status as testamentary beneficiary and executor, and instead to qualify themselves to take the estate and to administer it, it was essential that they establish decedent's domicile in Pennsylvania. Hence, the declaratory judgment petition.

The administrator and heirs were successful in obtaining a declaratory judgment that decedent was a Pennsylvania domiciliary, and that Bamber was her slayer disqualifying him from taking any share in the estate and from serving as executor. See Craig Estate (No. 2) supra. In addition, counsel for the petitioner were successful in persuading the Virginia authorities to accept the Pennsylvania adjudication of domicile, notwithstanding that virtually all of decedent's real and personal estate was physically located in Virginia. The result was that Delawder remained as administrator c.t.a., decedent's heirs at law took the whole estate, the estate was administered solely in Pennsylvania and the Commonwealth was spared any need to contest the issue with the Virginia authorities. See Uniform Act on Interstate Compromise and Arbitration of Inheritance Taxes, 72 P.S. §2490.1 et seq.

The declaratory judgment litigation was a contest between the heirs (represented by the administrator) and Bamber to determine who should take the estate and in what shares, essentially a will contest; consequently, we apply the rule that the estate is not liable for counsel fees and litigation expense unless immediate and direct benefit to the estate is shown which equitably justifies imposing liability for such expense on the estate or Commonwealth.[8]

In this case, however, significant benefit from the litigation was not confined to the heirs; in addition, the decision on domicile was crucial to the Commonwealth by subjecting the estate to Pennsylvania inheritance tax liability which otherwise would not have existed. Here it is not true, as in the usual contest over a will or distribution, that only the beneficiaries are interested in or derive significant benefit from the outcome of the litigation; here the outcome is not "a matter of indifference . . . [to] creditors and the rest of the world" as stated in Mumper's Estate previously quoted. As respects the Commonwealth, the litigation *created* the taxable fund which without the litigation would not have existed in Pennsylvania.

The Commonwealth's position that it should get a free ride under these circumstances, and pay no part of the cost of the lengthy, difficult and costly legal undertakings involved in making this estate administerable and taxable in Pennsylvania without which the Commonwealth would stand penniless from this estate, is strikingly inequitable and

---

8. The contest over the right to administer the estate was an incidental part of the declaratory judgment litigation, making it unnecessary to decide here whether the expense of such litigation, standing alone, is payable by the estate.

unjustified. The Commonwealth had a direct and immediate interest in the basic litigated issue of domicile, and might well have elected to intervene in the case as a party. See section 11 of Uniform Declaratory Judgments Act, as amended July 25, 1963, P.L. 305, sec. 2, 12 P.S. §841, and Pa.R.C.P. 2326. Had the estate involved a million dollars, the Commonwealth would likely have acted with alacrity to participate in the issue. Compare Dorrance Estate, 309 Pa. 151, 163 Atl. 303 (1932). Here, instead counsel and the administrator were left to carry the load. Our attitude parallels that of the Supreme Court in Harris's Appeal, 323 Pa. 124, 128, 186 Atl. 92 (1936), where the court said:

"It is with poor grace that it [here, the Commonwealth] now presses its claim to the full amount of the award, having held aloof when its interest was imperiled and was being protected by another party in interest . . . If a principle in law or equity can be found to sustain an award of reasonable counsel fee and costs to the owner's attorney, who litigated the . . . dispute and whose services helped produce the fund, it ought to be applied."

The court held that in such cases, the attorney should be considered as having an equitable allowance in the nature of a charging lien on the fund, so ". . . *ex aequo et bono,* that a party should not run away with the fruits of the cause without satisfying the legal demands of the attorney by whose industry the fruits were obtained" (130-31).[9]

---

9. "Ex aequo et bono.—A phrase derived from the civil law meaning according to what is just and good; according to equity and conscience." 32A C.J.S 848, n. 40(2), citing Kraft Foods v. Commodity Credit Corporation, 266 F. 2d 254, 264 (7th Cir, 1959).

The fact that the Commonwealth is a great and sovereign government does not excuse, but instead insures the obligation to do equity in a case of this kind, where the Commonwealth asserts rights in private, not public, property.[10] This litigation and the skillful and persistent efforts of counsel were indispensable to the Commonwealth's very right to tax, and the benefit reaped by the Commonwealth from those services and the costs expended is such that equity demands a contribution from the Commonwealth to that cost and expense in the form of an inheritance tax deduction. Under the particular circumstances of this case, we hold that such litigation expense in substantial part is not "litigation expenses of beneficiaries" within the meaning of section 663. Equitable apportionment of the expense is appropriate in this case. Compare Williams Estate, 42 D. & C. 2d 169, 181 (1967).

## The Survival Action

This civil action was brought by the administrator under the Act of April 1, 1937, P.L. 196, 12 P.S. §1602, to recover damages for the estate from Harry Bamber because of his wrongfully causing decedent's death. See 7 Goodrich-Amram 2d §§2201:2 and 2201:35. No wrongful death action was brought because of the statute of limitations, and the full recovery in the survival action belongs to the estate. See Pozzuolo Estate, 433 Pa. 185, 192, 249 A. 2d 767 (1969). As a result of the action, the estate recovered a judgment against Bamber for $35,000; the only valuable asset of Bamber's found

---

10. Compare Furia v. Philadelphia, 180 Pa. Superior Ct. 50, 115 A. 2d 236 (1955).

was the parcel of land in the Village of Listonburg, Addison Township, this county; execution was levied and the land was bought in by the estate at the sheriff's sale. It is listed in the inventory and appraisement at $3,825.

This taxable asset was acquired as the direct result of the declaratory judgment proceeding eliminating Bamber as sole beneficiary of the estate, otherwise such proceedings would most likely have been futile under the circumstances here present; although letters pendente lite might have been issued to replace Bamber as personal representative for purposes of the action, any recovery from Bamber would belong to Bamber in the absence of insolvency.

The land is an asset created for the estate by litigation, without which the asset would not be in the estate. The costs of this litigation to the estate are fully deductible as an administration expense.

## Administrator's Fee

The claimed administrator's fee of $1,528 is reasonable (see Probate Code §3537), and the action of the register in reducing it to $1,450 is disapproved.

## CONCLUSION

We think the following are properly deductible for inheritance tax purposes: one-half of the counsel fee and expense attributable to the declaratory judgment proceeding, all of the counsel fee and expense attributable to the survival action, and a counsel fee for the usual and ordinary legal services in the administration of the estate. We calculate the deductible counsel fee as follows:

Total counsel fee claimed

$12,288.80

Amount allowable on personal estate
   for ordinary services (5% of
   $27,379.82) ............ $1,369.00

Amount allowable on real estate
   (40% of $3,825.00) ...... <u>1,530.00</u>
          Subtotal ..... $2,899.00    −2,899.00

Balance attributable to declaratory
   judgment proceeding ............. $ 9,389.80
50% of above balance ..... 4,694.90
Add subtotal (supra) ...... 2,899.00
Deductible Counsel Fee .. <u>$7,593.90</u>

## ORDER

Now, July 27, 1978, the exceptions of the register of wills and the appeal of the administrator c.t.a. are sustained in part and dismissed in part, consistent with the foregoing opinion and this order.

The register of wills shall recalculate and the estate shall pay the Pennsylvania inheritance tax so calculated, allowing as deductions:

(1) A counsel fee of $7,593.90; and

(2) One-half of the other costs and expenses of litigating the declaratory judgment proceeding; and

(3) All of the other costs and expenses of litigating the survival action (147 Civil 1975); and

(4) An administrator's fee of $1,528.

In all other respects, the first and partial account is confirmed absolutely. Costs on the estate.