# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Estate of Richard M. Scaife, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 88 C.D. 2024 |
| | : | |
| Commonwealth of Pennsylvania | : | Argued: February 4, 2025 |

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## *OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                                    FILED: September 23, 2025

This appeal concerns whether the Estate of Richard M. Scaife (Decedent) (Estate) is entitled to a $29 million inheritance tax refund from the Commonwealth of Pennsylvania. The Estate claims entitlement to the refund based on the alleged deductibility of payments made pursuant to trustee indemnification agreements that Decedent executed in conjunction with his receipt of more than $400 million in distributions from a trust settled by his mother for his primary benefit. Central to this dispute is whether the indemnification agreements were bona fide under Section 2129(b) of the Inheritance and Estate Tax Act (Inheritance Tax Act)[1] where one of the trustees indemnified under the agreements, Attorney H. Yale Gutnick, simultaneously was also 1) Decedent's personal and business counsel who advised him on the agreements, 2) an executive in Decedent's media companies, 3) an executor of the Estate, and 4) a trustee of the trust that holds the vast majority of the Estate's assets.

---

[1] Act of March 4, 1971, P.L. 6, *as amended*, added by the Act of August 4, 1991, P.L. 97, 72 P.S. § 9129(b).

The Estate appeals from the December 27, 2023 order of the Court of Common Pleas of Westmoreland County, Orphans' Court Division (Westmoreland County Orphans' Court), which denied the Estate's petition for review of the August 5, 2022 decision and order of the Board of Finance and Revenue (Board). The Board affirmed the Department of Revenue (Department), Board of Appeals' (BOA) denial of the refund, concluding that the Estate was not entitled to inheritance tax deductions under Sections 2127(1)[2] and 2129(b) of the Inheritance Tax Act.

After thorough review, we affirm in part, vacate in part, and remand for further proceedings.

## I.    FACTS AND PROCEDURAL HISTORY

The facts underlying this dispute may be summarized as follows.[3] By deed of trust dated December 31, 1935, Sarah Mellon Scaife settled a trust for Decedent's primary benefit (1935 Trust or Trust). The 1935 Trust directed that, at Decedent's death, any remaining Trust assets were to be administered for the benefit of Decedent's children, David and Jennie Scaife (David; Jennie). From 1994 until Decedent's death in 2014, the trustees of the 1935 Trust were PNC Bank (PNC), H. Yale Gutnick (Attorney Gutnick), and James Mellon Walton (Walton) (together, Trustees). Beginning in 1996 and continuing until shortly before his death, Decedent requested and received from the Trustees distributions of Trust principal totaling over $400 million (Distributions). The Distributions collectively exhausted the principal assets of the Trust.

---

[2] 72 P.S. § 9127(1). Section 2127 was added by the Act of August 4, 1991, P.L. 97.

[3] We take the facts and procedural history primarily from (1) the Stipulation entered by the parties in the Westmoreland County Orphans' Court and (2) the decision of the Board. *See* Reproduced Record (R.R.) 1574a-82a; Estate Br., App. 2. We supplement from the record below only as necessary to complete our analysis.

2

Because Decedent did not want David and Jennie to be aware of the Distributions, he did not seek court approval. Instead, in connection with each distribution, and in accord with standard PNC and industry practices, *see* Stipulation, ¶ 13, R.R. 1576a, the Trustees requested that Decedent execute indemnification agreements pursuant to which Decedent promised to indemnify the Trustees and hold them harmless from any claims related to the Distributions (Indemnification Agreements). In total, Decedent executed 19 Indemnification Agreements in association with receiving 19 Distributions from the 1935 Trust. All of the Indemnification Agreements, except the last two, contain the following language:

> I [Decedent] . . . do hereby indemnify and save harmless [the Trustees] from any loss, claim, demand, surcharge, and cause of action of any kind whatsoever, at law or in equity, including any legal fees or other expenses incurred in defending against the same, resulting from (a) their exercise of the power, authority[,] and discretion to effect the foresaid principal distribution to me, and (b) their effecting such distribution without the filing of any account and/or a court adjudication.

(Stipulation, ¶ 14; R.R. 1576a.)[4] Each of the Indemnification Agreements also contains a recital of the specific amount of the associated distribution to Decedent. There is no dispute that Decedent received all of the Distributions, which ranged in amount from approximately $36,000 to approximately $36 million. There further is no dispute that the funds from the Distributions were utilized primarily to fund Decedent's media interests, including the Pittsburgh Tribune-Review and related entities (Media Interests).

---

[4] The parties' Stipulation in the Westmoreland County Orphans' Court indicates that all of the Indemnification Agreements, except the final one, contain this language. (Stipulation, ¶ 14; R.R. 1576a.) However, the penultimate Indemnification Agreement, executed in August 2011, does not contain this language. It contains alternative indemnification and release language together with additional recitals. *See* R.R. 1623a.

The last two Indemnification Agreements, executed in 2011 and 2014, distributed to Decedent all principal assets remaining in the Trust and contain additional recitals and expanded indemnification language. Therein, Decedent released and agreed to indemnify

> [Attorney Gutnick, Walton,] and PNC, in its corporate capacity and as Trustee, from all liabilities and expenses (including legal fees and costs that may arise from the Trustees' administration of the Trust, whether incurred in (i) defending against claims or (ii) enforcing its rights under this [Indemnification] Agreement).

(Stipulation, ¶ 15; R.R. 1577a.) They further contain additional language (1) noting that the Trustees obtained from their **legal counsel opinions** that the language of the Trust afforded them the "broadest possible discretion" to make the Distributions, and (2) explaining, *inter alia*, Decedent's desire to **forgo an accounting and court approval of the Distributions.** (R.R. 1621a-22a, 1625a-26a.) Decedent executed all but one of the Indemnification Agreements on his own behalf. Attorney Gutnick executed the final Indemnification Agreement both on his own behalf as an indemnified trustee and on Decedent's behalf as his power of attorney. *Id.* 1629a.

Decedent, while a resident of Westmoreland County, died on July 4, 2014, and was survived by David and Jennie, two ex-wives, and two grandchildren. Decedent's will (Will) was admitted to probate on July 11, 2014, and Attorney Gutnick and Walton were sworn in as executors (Executors). The Will and an associated revocable trust (Revocable Trust) provided for bequests to various individuals and charitable organizations, with the residue to be distributed to a separate trust to manage Decedent's Media Interests. Decedent provided for no bequests to his children, although they were the remainder beneficiaries of the 1935 Trust and the beneficiaries of a separate trust settled by their grandmother.

4

Several months after Decedent's death, David and Jennie filed suit against the Trustees in the Orphans' Court Division of the Allegheny County Court of Common Pleas (Allegheny County Orphans' Court), alleging that the Trustees breached their fiduciary duties in approving the Distributions (Trust Litigation). Pursuant to the Indemnification Agreements, the Trustees, including Attorney Gutnick, requested that the Estate assume the costs of their defense, which the Executors, including Attorney Gutnick, agreed to do. In the meantime, in April 2015, the Estate paid an advance estimated inheritance tax payment of $100 million to the Department. Thereafter, the Estate filed an inheritance tax return on October 6, 2015, in which it reported a net taxable estate of $630,220,947, a tax due amount of $94,533,142, and a requested tax refund of $10,193,515. The Department accepted the return as filed on September 26, 2016, and issued the requested refund without interest.[5]

All the while, the Trust Litigation continued for approximately six years. Multiple attorneys and law firms were involved in the Trust Litigation, with defense and related costs totaling several million dollars. Of that total, Attorney Gutnick's firm, Strassburger, McKenna, Gutnick & Gefsky, was paid approximately $1.6 million. (R.R. 2084a, 2302a.)

On December 30, 2019, the Trustees, co-executors of the Estate, David, David's now-adult son, and Jennie's estate[6] reached a settlement of the Trust Litigation (Settlement). The resulting settlement agreement (Settlement Agreement)

---

[5] In an appeal unrelated to the issues involved here, the Estate requested and obtained, in part, an additional refund that decreased the taxable Estate to $627,978,832.23 and the tax due to $94,196,824.84.

[6] Jennie died during the course of the Trust Litigation and prior to its settlement.

provided, in material part, that the Trustees would pay a total of $200 million, which represented (1) the accounting income that would have been earned by the 1935 Trust from the date of Decedent's death until November 29, 2018 (Jennie's death), allocated between David and Jennie's estate, and (2) the balance of the $200 million paid back to the 1935 Trust for administration by new trustees for David's benefit (Settlement Payment). The Settlement Agreement required both the approval of the Allegheny County Orphans' Court and an order from the Westmoreland County Orphans' Court directing disbursement of the Settlement Payment from the Estate. The Allegheny County Orphans' Court approved the Settlement on December 23, 2020. Walton, as co-executor of the Estate, thereafter petitioned the Westmoreland County Orphans' Court to approve disbursement of the Settlement Payment (Payment Petition).

The **Commonwealth**, by appearance of the **Office of Attorney General**, **filed an answer** to the Payment Petition and **participated in hearings and argument.** On May 20, 2021, the Westmoreland County Orphans' Court granted the Payment Petition and directed the disbursement of the Settlement Payment from the Estate. (R.R. 1790a.) **That order was not appealed.** The Estate thereafter applied to the BOA for an inheritance tax refund of $28,994,769.04 plus interest, claiming that the Settlement Payment, made pursuant to the Indemnification Agreements, was a non-taxable contractual liability of the Estate pursuant to Section 2129(b) of the Inheritance Tax Act.[7] The Estate made the Settlement Payment as directed on August 25, 2021, and the BOA denied its request for an additional refund

---

[7] Section 2129(b) of the Inheritance Tax Act provides that a liability or debt of a decedent that is based on a promise or agreement is deductible from the gross taxable estate only where the promise or agreement is contracted "bona fide and for an adequate and full consideration in money or money's worth." 72 P.S. § 9129(b).

on December 22, 2021. The Estate petitioned for review to the Board on February 17, 2022.[8]

Before the Board, the Estate submitted documents evidencing the Settlement Payment, the costs, fees, and expenses incurred in defending the Trustees in the Trust Litigation, and other costs incurred in administering the Estate. By order mailed August 5, 2022, the Board denied the Estate's petition for review. The Board concluded that the Indemnification Agreements were neither bona fide nor supported by adequate money or money's worth consideration as required by Section 2129(b) of the Inheritance Tax Act. (Board Decision at 8.) The Board further concluded that the expenses incurred in defending the Trustees in the Trust Litigation did not benefit the Estate, but, rather, were merely expenses incurred by the Trustees in administering the 1935 Trust. *Id.* Finally, the Board concluded that the Estate did not submit sufficient documentation to support a deduction for the other expenses incurred in administering the Estate. *Id.*[9]

The Estate petitioned for review to the Westmoreland County Orphans' Court[10] on August 31, 2022. As part of the Stipulation filed with the Westmoreland

---

[8] Walton died on January 2, 2022, and Laura Beth Gutnick replaced him as co-executor of the Estate.

[9] One Board member, David R. Kraus, dissented. Board Member Kraus concluded that the Indemnification Agreements were both bona fide and supported by adequate money consideration and, therefore, were legitimate, deductible expenses of the Estate. Board Member Kraus further concluded that the asserted administrative expenses were incurred to preserve Estate assets that would have been utilized to pay any judgment obtained by Decedent's children in the Trust Litigation. (Board Decision at 9-10.)

[10] Petitions for review of a decision of the Board establishing inheritance tax liability are filed in the court of common pleas of the county where the pertinent estate is under administration. Section 2181(f) of the Inheritance Tax Act, added by the Act of August 4, 1991, P.L. 97, 72 P.S. § 9181(f); 42 Pa.C.S. § 933(a)(1)(vi). *See also* Pa.R.A.P. 1571. The same Common Pleas Judge, **(Footnote continued on next page…)**

County Orphans' Court, the parties agreed that the issues to be tried were (1) whether the Settlement Payment and fees and costs incurred in defending the Trustees in the Trust Litigation were deductible expenses of the Estate; (2) whether the Commonwealth had waived the ability to challenge the validity of the Indemnification Agreements because it failed to challenge them in the Payment Petition litigation; (3) whether the Estate was precluded from arguing that the Commonwealth had waived its ability to challenge the Indemnification Agreements; and (4) whether all or any portion of the fees, costs, and expenses incurred during Estate administration were deductible under Section 2127(1) of the Act, 72 P.S. § 9127(1).

The Westmoreland County Orphans' Court held a hearing on May 8, 2023, at which Edward J. Strassburger (Attorney Strassburger), Jeffrey S. Lehman, and Attorney Gutnick testified. The pertinent testimony may be summarized as follows. Attorney Strassburger is an attorney in the same firm as Attorney Gutnick. He testified that each time Decedent requested a distribution of Trust principal, PNC, in accordance with its standard practice, drafted and requested that Decedent execute an Indemnification Agreement to guarantee the payment. (R.R. 2201a-02a; 2244a.) According to Attorney Strassburger's understanding, PNC requested the Indemnification Agreements, and Attorney Gutnick and Walton agreed to them because they were concerned about their own liability. *Id.* 2244a. Attorney Strassburger noted that similar indemnification agreements had accompanied distributions from other Mellon family trusts for which Gutnick, Walton, and PNC were not trustees. *Id.* 2203a-04a. He further noted that, when the first

---

The Honorable Harry F. Smail, Jr., presided over and decided both the Payment Petition and the Estate's inheritance tax appeal from the Board.

8

Indemnification Agreement was written, several drafts were exchanged between his firm and counsel for PNC before the parties agreed on final language. During the process, Decedent asked repeatedly about the tax consequences of transferring principal assets out of the Trust to him personally and, after his death, to his Estate. *Id.* 2218a-19a; 2237a-39a. Attorney Strassburger recounted that Decedent's relationship with David and Jennie fluctuated between being "positive" and "toxic," that they had been disinherited in Decedent's Will, and that nothing in the Distributions or the Indemnification Agreements was designed to transfer to them any assets. (R.R. 2211a-13a; *see also* R.R. 2284a-85a.)

The Estate then called Jeffrey S. Lehman, who is a retired former trust executive at PNC who oversaw the Trust's administration. He testified that PNC requested and drafted an Indemnification Agreement each time Decedent requested a principal distribution from the Trust. PNC and counsel from Attorney Gutnick's firm then exchanged drafts and settled on final language. *Id.* 2260a, 2268a. Mr. Lehman testified that one reason the parties did not seek court approval for the Distributions was the lengthy history of the Trust and the potential difficulty in obtaining the necessary documentation that would be required by the orphans' court. *Id.* 2274a.

The Estate lastly called Attorney Gutnick. Attorney Gutnick explained that he (1) was Decedent's close friend and personal and business counsel for several decades, (2) worked for all of Decedent's businesses and served as chairman of the board and president of Decedent's media company, (3) served as trustee of all of Decedent's trusts, including the Revocable Trust that held the vast majority of the Estate's assets, and (4) served as co-executor of the Estate. (R.R. 2287a-90a.) With regard to the Distributions, Attorney Gutnick testified that Decedent requested the

9

Distributions to fund his media businesses and wanted them to remain private and outside of court proceedings. *Id.* 2280a-85a. When Decedent requested a distribution, PNC would draft an Indemnification Agreement and send it to Attorney Gutnick's firm, where it was reviewed by Attorney Gutnick and several other lawyers there. After suitable language was agreed upon, Attorney Gutnick would then discuss the agreement and the distribution transaction in detail with Decedent. *Id.* 2282a, 2293a, 2295a-96a, 2306a-09a. Attorney Gutnick confirmed that Decedent's **chief reason for forgoing court approval of the Distributions was his desire to keep them private and outside the knowledge of his children.** *Id.* 2285a, 2294a. Attorney Gutnick also testified that, although PNC initially requested the execution of the Indemnification Agreements, he and Walton also wanted protection from liability. *Id.* 2294a.

After the parties submitted proposed findings and conclusions and post-hearing briefs, the Westmoreland County Orphans' Court denied the Estate's petition for review. In its written opinion, the Westmoreland County Orphans' Court concluded that (1) the Commonwealth had not waived its ability to challenge the Indemnification Agreements; (2) the Estate failed to establish that the Indemnification Agreements were bona fide because (a) Attorney Gutnick was both a Trustee and Decedent's personal and business counsel, and (b) Decedent had neither participated in drafting the Indemnification Agreements nor retained private counsel to review them; (3) the Indemnification Agreements **were not supported by adequate money or money's worth consideration** because Decedent executed the Indemnification Agreements not to obtain the Distributions, but rather to **avoid court involvement;** and (4) the litigation expenses incurred by the Estate in defending the Trustees in the Trust Litigation were analogous to fees incurred in a

10

will contest and did not benefit the Estate; rather, the fees benefited Decedent's children. (Westmoreland County Orphans' Ct. Op. at 6-9.) The Westmoreland County Orphans' Court did not address the Estate's refund request related to other expenses incurred in Estate administration. The Estate appealed to this Court on January 4, 2024.

## II. ISSUES[11]

The Estate presents five issues on appeal, which we fairly can combine and reorganize for ease of analysis as follows. The Estate contends that the Westmoreland County Orphans' Court (1) improperly utilized rules of statutory construction applicable to taxing statutes to construe Section 2129(b) against the Estate; (2) erred in concluding that the Estate failed to establish that the Indemnification Agreements were bona fide contracts; (3) erred in concluding that the Estate failed to establish that the Indemnification Agreements were supported by adequate "money or money's worth" consideration; and (4) erred in denying the Estate's requested refund for the fees, expenses, and costs incurred in both defending the Trustees in the Trust Litigation and in otherwise administering the Estate.

___

[11] Our review of an orphans' court order is limited to determining whether legal error was committed and whether the orphans' court's findings are supported by the evidence of record. *Borough of Downington v. Friends of Kardon Park*, 55 A.3d 163, 172 (Pa. Cmwlth. 2012) (*en banc*). Our review therefore is quite narrow, and the orphans' court's resolutions of conflicts in the evidence are entitled to the weight we would afford to a jury's verdict. *Id.* (citing *In re Estate of Schram*, 696 A.2d 1206, 1211 (Pa. Cmwlth. 1997)). Nevertheless, we exercise non-deferential, plenary, *de novo* review over questions of statutory interpretation, which are questions of law. *In re Estate of Potocar*, 283 A.3d 936, 940-41 (Pa. Cmwlth. 2022) (*en banc*); *Township of Washington v. Township of Upper Burrell*, 184 A.3d 1083, 1087 n.3 (Pa. Cmwlth. 2018) (*en banc*).

## III. DISCUSSION

### A. RULES OF STATUTORY CONSTRUCTION

The Estate first argues that the Westmoreland County Orphans' Court erred in applying rules of statutory construction to determine whether the Estate carried its burden to establish its entitlement to a refund. The Estate insists that, because the language of Section 2129(a) is clear, resort to statutory construction was unnecessary. The Estate also argues that, to the extent there is ambiguity in Section 2129(b), it is a proviso modifying the general deduction language in Section 2129(a) and must, therefore, be strictly construed in favor of allowing the deduction. We agree with the Estate that **resort to statutory construction principles was unnecessary because the language of Section 2129(b) is clear.** We accordingly cannot agree with the Westmoreland County Orphans' Court on this point.

### 1. Applicable Principles of Law

To begin,

> [t]he polestar in [statutory interpretation] is to ascertain and effectuate the intent of the General Assembly. 1 Pa.C.S. § 1921(a). We necessarily begin with the language of the statute which is the first and best indication of legislative intent. When the plain language is clear and unambiguous we must not disregard it in pursuit of the law's spirit. 1 Pa.C.S. § 1921(b). When the text of the statute is ambiguous, then—and only then—do we advance beyond its plain language and look to other considerations to discern the General Assembly's intent.

*Woodford v. Insurance Department*, 243 A.3d 60, 73-74 (Pa. 2020) (some internal citations, quotations, and editing omitted). Further,

> [a] statute is ambiguous when it is reasonably susceptible of more than one interpretation or its language is vague, uncertain, or indefinite. The ambiguity of statutory language is determined by reference to the language itself,

12

the context in which the language is used, and the statute as a whole. We must presume that the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.

*Commonwealth v. Rensel*, 315 A.3d 238, 246 (Pa. Cmwlth. 2024) (internal citations and quotations omitted). Lastly, and relevant here, we need not defer to an administrative agency's interpretation of the plain meaning of a clear, unambiguous statute, which interpretation is a question of law for our determination. *Crown Castle NG East, LLC v. Pennsylvania Public Utility Commission*, 234 A.3d 665, 692-94 (Pa. 2020).

The Statutory Construction Act of 1972 provides specific rules of construction for taxing statutes where they are deemed ambiguous or there is reasonable doubt as to their meaning. Section 1928(b)(3) requires that provisions *imposing* a tax are to be strictly construed, with any ambiguity or reasonable doubt resolved against the taxing entity and in favor of the taxpayer. *City of Philadelphia v. City of Philadelphia Tax Review Board ex rel. Keystone Health Plan East, Inc.*, 132 A.3d 946, 952 (Pa. 2017) (citing, in part, 1 Pa.C.S. § 1928(b)(3)); *In re Estate of Ross*, 815 A.2d 30, 35 (Pa. Cmwlth. 2002). This rule applies equally well to statutory provisions imposing inheritance tax. *Estate of Carlson*, 388 A.2d 726, 728 (Pa. 1978). Section 1928(b)(5) similarly requires that statutory provisions *exempting* persons or property from taxation are to be construed strictly in favor of the taxing authority. 1 Pa.C.S. § 1928(b)(5).

Our Supreme Court has explained the interplay between these two rules of construction:

Somewhat counterintuitively, these two strict construction rules create opposite forces depending on the categorization of the tax provision. On the one hand, provisions that impose taxes are strictly construed in favor

13

of the taxpayer and against the taxing authority. Accordingly, provisions defining what property is subject to the tax, as opposed to what property is "excluded," are interpreted strictly in favor of the taxpayer. Conversely, statutes creating "exemptions" from taxes are construed in favor of the taxing authority and strictly against the taxpayer.

*Greenwood Gaming and Entertainment, Inc. v. Department of Revenue*, 90 A.3d 699, 710-11 (Pa. 2014) (internal citations omitted). Nevertheless, "[s]trict construction does not require that a statute be construed as narrowly as possible, or that it be construed so literally and without common sense that its obvious intent is frustrated." *Reaman v. Allentown Power Center, L.P.*, 74 A.3d 371, 374 (Pa. Cmwlth. 2013) (citation, quotation, and editing omitted).

Relatedly, provisos in statutes are intended "to limit rather than to extend the operation of the clauses to which they refer." 1 Pa. C.S. § 1924. Provisos need not be expressly labeled in a statute, and their purpose is to "qualify, restrain, or otherwise modify the general language of the enabling provision." *Downs Racing, L.P. v. Commonwealth*, 288 A.3d 542, 548 (Pa. Cmwlth. 2022) (citations and quotations omitted). Provisos themselves, when resort to construction principles is necessary, are to be strictly construed. *Commonwealth ex rel. Largiotti v. Lawrence*, 193 A. 46, 48 (Pa. 1937).

### 2. Analysis

Section 2129 is one of five sections of the Inheritance Tax Act that provide for and govern deductions from the taxable estate of a decedent. *See* Sections 2126-2130 of the Inheritance Tax Act, 72 P.S. §§ 9126-9130. Section 2129, titled "Liabilities," generally directs that "all liabilities of the decedent shall be deductible subject to the limitations set forth in this section." 72 P.S. § 2129(a). Section 9129(b) goes on to qualify that, with certain exceptions not applicable here,

14

"the deductions for indebtedness of the decedent, when founded upon a promise or agreement, shall be limited to the extent that it was contracted [(1)] bona fide and [(2)] for an adequate and full consideration in money or money's worth." 72 P.S. § 9129(b).

The Westmoreland County Orphans' Court mentions strict construction in only two places in its original opinion: first in accurately setting forth the rules of construction applicable to taxing statutes (Orphans' Ct. Op. at 5), and second in its conclusion that the Estate did not carry its burden to establish either of the elements required under Section 2129(b). *Id.* at 8. In its Pa.R.A.P. 1925(a) opinion, the Westmoreland County Orphans' Court explained that, because the parties offered two different and reasonable "readings" of Section 2129(b), resort to statutory construction principles was necessary. Because Section 2129(b) is a provision governing the deductibility of a decedent's contractual liabilities, the Westmoreland County Orphans' Court strictly construed Section 2129(b) in favor of the Commonwealth. (Orphans' Ct. Rule 1925(a) Op. at 2-3.)

We disagree that Section 2129(b) is ambiguous and, relatedly, that resort to statutory construction principles was necessary. That is, we cannot agree that the terms "bona fide" and "consideration in money or money's worth" are reasonably susceptible to multiple meanings. Section 2129(b) as a whole plainly applies to contractual liabilities of a decedent, which here undisputedly include the Indemnification Agreements. No construction of Section 2129(a) or (b) is required in that respect. Further, the terms "bona fide" and "consideration in money or money's worth," although surely susceptible to myriad *applications*, are not ambiguous merely because, as the Westmoreland County Orphans' Court concluded, the parties offered differing interpretations as to how they apply in this

15

case.  Rather, we conclude that the *meaning* of those terms is singular and plain and not reasonably susceptible to multiple interpretations.

The terms "bona fide" and "adequate and full consideration in money or money's worth" are not defined in the Inheritance Tax Act.  We therefore interpret them according to their common and plain usage, as understood as a whole and in context. 1 Pa.C.S. § 1903.  The term "bona fide" is defined in Black's Law Dictionary as "[m]ade in good faith, without fraud or deceit," or "sincere, genuine." *bona fide*, Black's Law Dictionary (12th ed. 2024).[12]  The term "consideration" is defined as "[s]omething (such as an act, a forbearance, or a return promise) bargained for and received by a promisor from a promisee," or "that which motivates a person to do something, esp. to engage in a legal act."  *Id.*, *consideration*. "Adequate consideration" is defined as consideration that is "fair and reasonable under the circumstances of the agreement."  *Id., adequate consideration*.  *See also Estate of Beck*, 414 A.2d 65, 69 (Pa. 1980) (inheritance tax deductions for transfers allowable only where the transferor has received, in an arm's length transaction, more than adequate contractual consideration in "full consideration in money or money's worth," which is consideration "equal or reasonably proportioned to the value of that for which it is given") (citations omitted).  Thus, "adequate and full consideration in money or money's worth" plainly means that the "something" that

---

[12] We acknowledge the Pennsylvania Supreme Court's decision in *In re Lazar's Estate*, 260 A.2d 734, 736 (Pa. 1970), wherein that Court explained the purpose of Section 2129(b)'s predecessor provision as preventing "the depletion of a decedent's taxable estate by the creation of indebtedness intended as a substitute for a taxable bequest."  Nevertheless, the Supreme Court did not hold, as the Estate argues, that all agreements entered into by a decedent are bona fide and supported by adequate consideration in money or money's worth as long they do not appear to be aimed at evading inheritance tax by hiding donative transfers in fraudulent commercial transactions.  *See* Estate Br. at 29.  The Supreme Court simply was not presented with a case where, as here, a deduction was denied based on a professional conflict of interest.

16

is bargained for or that motivates a party to engage in a legal act is a reasonably proportionate amount of money or something with an equivalent monetary value; in other words, a fair amount of money or its equivalent value was the desired benefit of the bargain struck by the acting party.

Taken together, we think these two definitions make clear the language of Section 2129(b): to be deductible, the contractual liabilities of a decedent must be based on agreements entered into (1) in good faith and without fraud or deceit, and (2) for the chief aim of obtaining either a payment of a fair and reasonably proportionate amount of money or something of equivalent value. We discern no ambiguity in these terms, and to the extent that the Westmoreland County Orphans' Court concluded that they were ambiguous and applied statutory construction principles, it erred. As explained *infra*, however, because we ultimately affirm the Westmoreland County Orphans' Court's determination that the Estate did not establish its entitlement to a refund under Section 2129(b), the error was harmless.

## B. THE SETTLEMENT PAYMENT

The Estate's next two issues concern whether the Settlement Payment validly may be deducted as an indebtedness of the Estate pursuant to Section 2129(b). Both the Board and the Westmoreland County Orphans' Court concluded that the Estate failed to carry its burden to establish that the Indemnification Agreements, pursuant to which the Settlement Payment was made, were either "bona fide" or supported by adequate "money or money's worth" consideration. We address first, and only, whether the Indemnification Agreements were "bona fide" because that question is dispositive as to whether the Settlement Payment is deductible.

17

With regard to whether the Indemnification Agreements are "bona fide,"[13] the Westmoreland County Orphans' Court first noted that, because of the attorney-client relationship between Decedent and Attorney Gutnick, the Indemnification Agreements are presumed to be voidable unless evidence clearly establishing their legitimacy is presented by the party seeking their enforcement. (Westmoreland County Orphans' Ct. Op. at 7.) The Westmoreland County Orphans' Court then went on to conclude that, because Decedent did not participate in drafting the Indemnification Agreements and did not engage independent counsel to review them before signing, the Estate failed to establish that the Agreements were bona fide. (*Id.* at 7-8; Westmoreland County Orphans' Ct. Rule 1925(a) Op. at 3-4.) In essence, the Westmoreland County Orphans' Court concluded, with very brief analysis, that Decedent executed the Indemnification Agreements without adequate knowledge or comprehension of their terms and, perhaps, based on undue influence by Attorney Gutnick acting in his own interest. Although we agree with the lower court's result, we reach it for reasons in addition to, and more involved than, those discussed by that court.

---

[13] The Estate has not briefed or otherwise preserved in this Court the question of whether the Commonwealth waived or is otherwise precluded from raising the issue of whether the Indemnification Agreements were bona fide. We nevertheless note that (1) the enforceability of the Indemnification Agreements was squarely before the Westmoreland County Orphans' Court in the Payment Petition proceedings; (2) the Commonwealth appeared and filed an answer to the Payment Petition requesting denial on grounds of conflict of interest; (3) the Commonwealth participated in the Payment Petition proceedings, including the argument after which the Westmoreland County Orphans' Court granted the petition, *see* R.R. 570a-92a; and (4) the Commonwealth did not appeal or otherwise challenge the Westmoreland County Orphans' Court's order. Thus, although the issues of waiver and collateral estoppel are not before us, we stress that the Commonwealth, in some capacity, had the opportunity to and did challenge the validity and enforceability of the Indemnification Agreements in the Westmoreland County Orphans' Court. Those challenges were rejected, and the Commonwealth did not appeal.

18

The Pennsylvania Supreme Court has summarized as follows the impact of the existence of a confidential relationship between contracting parties:

> When the relationship between the parties to an agreement is one of trust and confidence, the normal arm's length bargaining is not assumed, and overreaching by the dominant party for his benefit permits the aggrieved party to rescind the transaction. This is so because the presence of a confidential relationship negates the assumption that each party is acting in his own best interest. Once a confidential relationship is shown to have existed, it then becomes the obligation of the party attempting to enforce the terms of the agreement to establish that there has not been a breach of that trust.
>
> . . . .
>
> Where a confidential relationship exists, the law presumes the transaction voidable, unless the party seeking to sustain the validity of the transaction affirmatively demonstrates that it was fair under all of the circumstances and beyond the reach of suspicion.

*Frowen v. Blank*, 425 A.2d 412, 416 (Pa. 1981) (internal citations omitted). Fiduciary relationships, including those between lawyers and their clients, are of the highest order of confidential relationships and impose the highest duties of trust in the fiduciary:

> A fiduciary duty is the highest duty implied by law. A fiduciary duty requires a party to act with the utmost good faith in furthering and advancing the other person's interests, including a duty to disclose all relevant information. This highest duty will be imposed only where the attendant conditions make it certain that a fiduciary relationship exists.
>
> In some types of relationships, a fiduciary duty exists as a matter of law. Principal and agent, trustee and cestui que trust, attorney and client, guardian and ward, and partners are recognized examples.

19

*Yenchi v. Ameriprise Financial, Inc.*, 161 A.3d 811, 820-21 (Pa. 2017) (internal citations and quotations omitted).

Thus, the framework within which we answer this question is as follows. The Estate bore the burden of proving the deductibility of the Settlement Payment as a contractual liability of Decedent, which turns on whether the Indemnification Agreements are bona fide, *i.e.*, executed in good faith and without fraud or deceit. It is undisputed that Attorney Gutnick was (1) Decedent's longtime close friend, (2) Decedent's personal and business counsel who advised him on myriad matters, including the Indemnification Agreements, (3) one of the Trustees Decedent agreed to indemnify in the Indemnification Agreements, (4) the Executor of Decedent's Estate, (5) an executive in Decedent's Media Interests, (6) the trustee of multiple trusts settled by Decedent, including the Revocable Trust that holds the bulk of the Estate's assets, and (7) Decedent's power of attorney during his lifetime. Thus, both the execution and postmortem enforcement of the Indemnification Agreements clearly were born of a multi-layered confidential relationship between Decedent and Attorney Gutnick that implicated the array of Attorney Gutnick's significant and potentially conflicting professional and fiduciary duties. *See Frowen*, 425 A.2d at 418 ("[A] confidential relationship exists between two persons when one has gained the confidence of the other and purports to act or advise with the other's interest in mind[;] [s]uch a relationship is particularly likely to exist where there is a relation of friendship.") (quoting, in part, the Restatement (Second) of Trusts, § 2(b) (1959)) (some editing removed).

As a matter of law, then, the Indemnification Agreements, in this context, are presumptively voidable.[14] To prove their legitimacy and, therein, the

---

[14] Voidable contracts include, *inter alia*, those "where the contract was induced by fraud, mistake, or duress[.]" Restatement (Second) of Contracts, § 7(b) (1981).

20

deductibility of the Settlement Payment under Section 2129(b), the Estate had the burden to establish that all 19 of the Indemnification Agreements were "fair under the circumstances and beyond the reach of suspicion." *Frowen*, 425 A.2d at 416. We agree with the Westmoreland County Orphans' Court, again on much broader grounds, that the Estate failed to do so.

First, with regard to the execution of the Indemnification Agreements, Attorney Gutnick, as Trustee for the 1935 Trust, authorized the Distributions to Decedent and, in turn, presented the Indemnification Agreements to Decedent as his lawyer. In all of the Indemnification Agreements, Decedent agreed to indemnify Attorney Gutnick and hold him harmless *as Trustee* from any liability resulting from the Distributions. Decedent did not obtain any independent review of the Indemnification Agreements' terms or reasonableness, and Attorney Gutnick executed the last Indemnification Agreement both on his own behalf as an indemnified Trustee and on Decedent's behalf as his power of attorney. Moreover, the money from the Distributions, which together totaled over $400 million, was used to support and fund Decedent's Media Interests, for which Attorney Gutnick served as board chairman and president. The conflicts of interest here are manifest.

Second, regarding the enforcement of the Indemnification Agreements, when David and Jennie filed the Trust Litigation against the Trustees, Attorney Gutnick submitted the costs of his defense as Trustee to the Estate for payment. The Estate, via its Executors (including Attorney Gutnick), approved the payment of the requested litigation expenses. They together totaled several million dollars, approximately $1.6 million of which were paid to Attorney Gutnick's law firm. The Trustees did not prevail in the Trust Litigation, but instead agreed to settle the matter for $200 million. After the Settlement was approved by the Allegheny County

21

Orphans' Court, the Trustees requested, pursuant to the Indemnification Agreements, that the Estate make the Settlement Payment to David's and Jennie's estate. The Estate agreed and sought and obtained from the Westmoreland County Orphans' Court approval to make the Settlement Payment from Estate funds principally held in Decedent's Revocable Trust, of which Attorney Gutnick was trustee.

Considered together, these facts preclude a determination on this record that the Westmoreland County Orphans' Court erred or abused its discretion in concluding that the Estate failed to carry its burden to establish that the Indemnification Agreements, in both their execution and enforcement, were fair, reasonable, and "beyond the reach of suspicion." Attorney Gutnick, who stood in the highest of confidential relationships with Decedent, also controlled, in whole or in part, (1) the claims and expenses payable by the Estate, (2) the settlement of the Trust Litigation, (3) the Revocable Trust holding the vast majority of the Estate's assets, and (4) Decedent's Media Interests, which were significant (if not the sole) beneficiaries not only of the funds transferred out of the 1935 Trust during Decedent's lifetime, but also of the Estate's assets after Decedent's death. Conflicts of interest and fiduciary duties abound in the numerous and layered transactions underlying this matter. Those transactions, in the end, resulted in a several-hundred-million-dollar liability of the Estate, the complete absolvement of the Trustees of any liability for Distributions, and the payment to Attorney Gutnick's law firm of approximately $1.6 million in attorneys' fees. Although we cannot divine whether these results were intended by Decedent, we must agree with the Westmoreland County Orphans' Court's determination that the Estate has not succeeded in removing them from suspicion's reach.

22

This is so notwithstanding the parties' stipulation that the Indemnification Agreements were requested by the Trustees and drafted consistently with customary PNC and standard industry practices. Those facts, without more, simply do not establish the *bona fides* of the Indemnification Agreements in these circumstances. In other words, that the Indemnification Agreements were common practice and were court-enforced in the proceedings below does not mean that they were bona fide for inheritance tax purposes. We accordingly affirm the Westmoreland County Orphans' Court's ruling that the Settlement Payment is not deductible.[15]

## C. ESTATE ADMINISTRATION EXPENSES

The next issues involve the deductibility of Estate administration expenses related to the Trust Litigation and other matters. The Westmoreland County Orphans' Court concluded that the Trust Litigation expenses were not deductible because they did not benefit the Estate, but did not address the Estate's claim regarding other administration expenses.

### 1. Trust Litigation Fees and Expenses

Section 2127(1) of the Inheritance Tax Act provides that "[a]ll reasonable expense of administration of the decedent's estate and of the assets includable in the decedent's taxable estate are deductible." 72 P.S. § 9127(1). By comparison, "[l]itigation expenses of beneficiaries" are not deductible. Section 2130(3) of the Act, 72 P.S. § 9130(3). Whether certain litigation expenses are appropriate expenditures of an estate and whether those same expenditures can support an inheritance tax deduction under the Inheritance Tax Act are two different

---

[15] Given our disposition on this issue, we need not address whether the Indemnification Agreements were supported by full and adequate consideration in money or money's worth.

23

questions. The expenses may be permitted as reasonable, legitimate expenses of an estate and simultaneously disallowed as a deduction from inheritance tax. *See In re Craig's Estate*, 10 Pa. D. & C.3d 154, 167 (Pa. Comm. Pl. Somerset July 27, 1978) ("Inheritance tax deductions are confined to those allowed by the taxing statute, whereas permissible estate expenditures are governed by the laws pertaining to the administration of decedent's estate. The [Department]'s liability to allow a deduction or a disbursement does not necessarily follow from estate liability for its payment."). Further, "[t]he law is clear that expenses incurred to preserve and distribute the estate, that is, costs incidental to the administration of the estate, may be deducted, whereas costs incurred which are not necessary for the resolution of the estate, such as expenses for the sole benefit of the legatees, devisees or heirs, are not deductible." *Estate of Merryman*, 669 A.2d 1059, 1062 (Pa. Cmwlth. 1995); *see also Craig's Estate*, 10 Pa. D. & C.3d at 176 (litigation expenses not deductible unless the litigation (1) augments the estate assets by bringing into the estate additional funds or property, or (2) preserves estate assets that otherwise likely would have been lost).

Here, the Westmoreland County Orphans' Court likened the Trust Litigation expenses to those incurred in will contest litigation, which by nature does not benefit the Estate. Although we do not necessarily agree with the Orphans' Court's analogy, we nevertheless conclude that it neither erred nor abused its discretion in determining that the Trust Litigation expenses were not deductible.[16]

In the Trust Litigation, David and Jennie sued the Trustees for breach of their fiduciary duties in making the Distributions to Decedent during his lifetime.

---

[16] The reasonableness of the Trust Litigation expenses was not challenged below and is not at issue in this appeal.

24

David and Jennie did not sue the Estate[17] seeking payment from it; nor did they seek to bring any additional money or assets into the Estate. Rather, the Estate's involvement in the Trust Litigation came exclusively by way of the Indemnification Agreements. After suit was filed, **the Trustees, including Attorney Gutnick, requested that the Estate pay for their defense, and the Estate executors, including Attorney Gutnick, approved defense payments totaling several million dollars,** approximately $1.6 million of which was paid to Attorney Gutnick's law firm. The primary beneficiaries of the Estate's payment of the Trustees' defense costs were, quite obviously, the Trustees and the law firms that represented them. The Trust Litigation did not involve the Estate, was not aimed at increasing the Estate corpus, did not itself preserve any Estate assets, and did not seek to confer on the Estate any direct or immediate beneficial interest.

Further, although it is true that the *potential* total value of David and Jennie's claims in the Trust Litigation exceeded the value of the Estate corpus, the liability for those claims could only be imposed on the Estate via enforcement of the Indemnification Agreements to satisfy a judgment entered in David's and Jennie's favor. In the end, however, David and Jennie's claims were not adjudicated, and no judgment was entered. Instead, the parties reached the Settlement, and the Executors sought the approval of the Westmoreland County Orphans' Court to make the Settlement Payment on the Trustees' behalf. The potential "benefit" to the Estate via the Settlement's "preservation" of the Estate corpus is, in this respect, both remote and hypothetical.

---

[17] Jennie did file a will contest in the Westmoreland County Orphans' Court challenging the validity of Decedent's Will and its bequests. That action was resolved without any adjudication that the Will was invalid.

25

As noted in *Craig's Estate*, the **question** posed regarding the **deductibility of the expenses** incurred in defending the Trustees in the Trust Litigation is "whether the [E]state has such a *direct and immediate beneficial interest* in the issues of the litigation as to warrant its liability for the expense." *Id.* at 175 (emphasis in original) (citation omitted). *See also id.* ("It is similarly clear that litigation to defend the estate from claims *against it* and the payment of reasonable expense therefor[e] is authorized. In such cases, immediate and direct benefit to the estate is apparent.") (emphasis added) (internal citation omitted); *Id.* at 176 ("The equity for payment by the estate is clearest and strongest where the litigation augments the assets of the estate by bringing into court and subjecting to administration money or property not otherwise part of the estate corpus."). Here, the benefit to the Estate in paying for the Trustees' defense was contingent, indirect, and created exclusively by several layers of agreements and approvals which, at times, involved the same parties on both sides. We cannot conclude that such a remote benefit supports the deductibility of the costs to defend the Trustees in the Trust Litigation. We accordingly affirm the Westmoreland County Orphans' Court's decision in this respect.

## 2. Other Administrative Expenses

The Estate's petition for review to the Board included a demonstrative exhibit detailing the breakdown of the additional administrative expenses it sought to deduct, a revised skeleton inheritance tax return with deduction numbers modified accordingly, and "copies of all of the invoices for legal services." (R.R. 2077a; 2084a; 2085a-90a.) The Estate submitted the same documentation to the Orphans' Court, including hundreds of pages of invoices and supporting documentation. (Joint Ex. 12.) The Orphans' Court nevertheless did not address or make any

findings or conclusions regarding these additional administrative expenses in its opinions. Accordingly, we must remand this matter to the Orphans' Court to determine whether, and to what extent, these expenses are deductible as expenses of the Estate.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Estate of Richard M. Scaife,       :
                 Appellant     :
                            :
         v.            :   No. 88 C.D. 2024
                            :
Commonwealth of Pennsylvania  :

## *__ORDER__*

AND NOW, this 23rd day of September, 2025, the December 27, 2023 order of the Court of Common Pleas of Westmoreland County, Orphans' Court Division (Orphans' Court), is AFFIRMED, in part, and VACATED, in part, as set forth in the foregoing Memorandum Opinion. This matter is remanded to the Orphans' Court for further proceedings as directed therein.

Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge